# ROOT v. WOOLWORTH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 77. Argued and submitted November 10, 1893. — Decided November 27, 1893.

In 1870, M., a citizen of Indiana, filed a bill in equity in the Circuit Court of the United States for the District of Nebraska against R., a citizen of Nebraska, to establish his right to real estate near Omaha, to which R. set up title. Each claimed under a judicial sale against P. M. obtained a decree in 1872, establishing his title, and directing R. to convey to him, or, in default of that, authorizing the appointment of a master to make the conveyance. R. refused to make the conveyance, and it was made by a master to M. under the decree. The entire interest of M. came by mesne conveyances to W., a citizen of Nebraska. M. reëntered upon the premises, and set up the title which had been declared invalid in the decree of 1872. W. thereupon filed in the same court an ancillary bill, praying that R. be restrained from asserting his pretended title and from occupying the premises; that he might be decreed to have no interest in the lands; that a writ of possession issue, commanding the marshal summarily to remove R., his tenants and agents from the premises, and

that R. be perpetually enjoined from setting up his claims. R. demurred on the ground of want of jurisdiction by reason of both parties being citizens of the same State. The demurrer was overruled, the defendant answered, and upon the pleadings and proofs a decree was entered for plaintiff, in conformity with the prayer in the bill. *Held*,

(1) That the bill was clearly a supplemental and ancillary bill, such as the court had jurisdiction to entertain, irrespective of the citizenship of the parties;

(2) That the original decree not only undertook to remove the cloud on M's title, but it included and carried with it the right to possession of the premises, and that right passed to W as privy in estate;

(3) That certain facts set up as to an alleged transfer by M. of his interest to a citizen of Nebraska before filing his bill could not be availed of collaterally after such a lapse of time, and with no excuse for the delay;

(4) That the property claimed could be fully identified;

(5) That until R. should give notice that his holding was adverse to W., the latter was entitled to treat it as a holding in subordination to the title of the real owner under the decree of 1872.

THE appellee, as a privy in interest and estate, filed the bill in this case for the purpose of carrying into execution a former decree of the court, rendered in 1873, against the appellant in favor of Oliver P. Morton, by which the latter's right and title to a certain parcel of land was settled and established, and to which title and interest the appellee thereafter succeeded.

The proceedings in which the original decree was rendered were begun in 1870 in the Circuit Court of the United States for the District of Nebraska by Oliver P. Morton, in a suit against Allen Root, the appellant, to establish his right to certain premises near the city of Omaha, and to have the claim which Root asserted thereto declared a cloud upon his title. Both parties claimed the land under judicial sales previously had against one Roswell G. Pierce. The decree established the superiority of Morton's title, and ordered that Root should execute a conveyance of the premises to him within a designated time, and upon his failure so to do a special master, appointed for that purpose, was invested with the authority and directed to make such conveyance. Root did not appeal from this decree, which remains in full

force and unannulled or reversed, but he refused to make the conveyance, and the special master thereupon, by deed, transferred the property to Morton.

Thereafter, in June, 1873, Morton conveyed an undivided half interest in the premises to James Woolworth, the appellee, and the other half interest to his brother, William S. T. Morton. Upon the death of the latter his executors, under power and authority conferred by his will, transferred to Woolworth the other half interest in the premises. Being thus invested with the entire title, and Root having reëntered or resumed possession of the premises, Woolworth filed the present bill against him, in the same court, to carry into effectual execution the decree which had been rendered against Root in Morton's favor.

In his bill, after reciting the proceedings under which Morton originally acquired title to the premises, the suit under which that title was established as against Root, and the conveyance to Morton under the decree of the court, Woolworth set forth his acquisition of the title, and alleged that he had laid the property out into streets, blocks, and lots, and made it an addition to the city of Omaha; that he had sold several of those lots, and that he had paid the taxes on all of the property since 1873; that he had remained in undisturbed possession from 1873 up to within a short time before the filing of the bill, at which time Root had assumed to take possession of the premises, or a portion thereof, by building a fence around the same and a house thereon, and in exercising other acts of alleged ownership over the property.

The bill further alleged that in reëntering upon the premises Root claimed no rights therein or title thereto, except such as were asserted by him in opposition to Morton's right and title in the original suit; that his object in retaking possession was to induce parties to accept leases under him, and thereby drive the complainant to a multiplicity of actions to recover possession and reëstablish his rights to the premises, and it was averred that, "in order to carry the decree of this court made on the 8th of May, 1873, into

execution. and give. to your orator the full benefit thereof it is necessary that it shall be supplemented by an order of injunction hereinafter prayed, and unless such injunction be allowed to your orator such decree will be ineffective and your orator will be subjected to a multiplicity of suits in order to recover possession of the said premises from the parties to whom said defendant will lease the same. If left to himself, not only will the said defendant subject your orator to numerous actions for the recovery of the possession of said premises from many parties whom the said defendant will induce to enter upon the same, but, as your orator is informed and believes, the said defendant threatens to, and unless restrained by the order and injunction of your honors will, institute divers actions in respect of the title of the said premises and thereby vex, annoy, and harass your orator."

The bill further alleged that in the sheriff's deed to Morton, under the original judicial proceedings against Pierce, the premises were described as follows : "All that piece of land beginning at the northwest corner of section twenty-eight, thence south eight chains and five links; thence south eighty-five degrees twenty chains and two links; thence north nine chains and twenty links; thence west twenty chains to the place of beginning, all being in township fifteen, range thirteen east of the sixth principal meridian, in said county of Douglas," which presented an apparent obscurity or defect in the fact that the word *east* was omitted in the second call after the words "eighty-five," and that the defendant claimed that this defect was so radical as to afford no identification of the premises, and rendered the decree void; but the complainant averred that the sufficiency of that description was considered in the suit of Morton against Root, and that it was there held that the omission was no substantial defect, such as prevented the title from passing and vesting in Morton.

The prayer of the bill was that the defendant be, by order and injunction of the court, enjoined and restrained from asserting any right, title, or interest in the said premises, and from occupying the same or any part thereof, or leasing or pretending to lease, or admitting under any pretence what-

ever, any party, save the complainant, into the said premises, or upon the same, and from making any verbal or written contract, deed, lease, or conveyance, affecting the said premises, or the possession thereof, or the title thereto, and from excluding the complainant from said premises, or any part thereof, or preventing him from taking sole and exclusive possession of the same ; and that by decree it might be declared that the said defendant has not, and never had, any interest whatever in the said lands, as had been already declared and adjudged in the former decree; and that a writ of possession issue out of the court directed to the marshal, commanding him summarily to remove the defendant, his tenants, and agents therefrom; and that the injunction as prayed for might be made perpetual.

To this bill the defendant Root demurred for the reason that the court had no jurisdiction, because both complainant and defendant were citizens of the same State; because the bill was a proceeding in a court of equity in the nature of an ejectment bill, and because the complainant had a speedy and adequate remedy at law. The demurrer was overruled, the court basing its action upon the ground that the bill was ancillary or supplemental to the original cause of *Morton* v. *Root*, and was, therefore, not open to the objections taken against it.

Root then answered the bill, setting up the same defences interposed by him in the case of *Morton* v. *Root*, and further alleged that the decree in that case was void because Morton and his attorney had practised a fraud upon the court in concealing the fact that in 1869, prior to the institution of that suit, Oliver P. Morton had transferred and conveyed the premises in question to his brother, William S. T. Morton, which conveyance had been duly recorded in Douglas County, Nebraska, so that Oliver P. Morton had no title when he instituted his original suit, nor when the decree was rendered against defendant.

The answer further set up that the premises were so defectively described in the sheriff's deed to Morton, under the latter's attachment proceedings against Pierce, as to render

the same ineffectual and inoperative to vest title to the premises in controversy. The defendant also claimed that he had been in open and adverse possession of the premises since May 1, 1869, and that the complainant's rights were, therefore, barred by the statute of limitations. He further alleged that the decree in the suit of Morton against Root was one simply to remove a cloud upon the title and not to establish or confer any right of possession.

Upon pleadings and proofs, the Circuit Court rendered a decree in appellee's favor, in conformity with the prayer of his bill. 40 Fed. Rep. 723. From that decree the present appeal was prosecuted.

*Mr. Upton M. Young* and *Mr. George W. Covell*, for appellant, submitted on their brief, in which they contended :

I. There is a defect in the jurisdiction of the Circuit Court, which is apparent on the face of the bill. Equity will not entertain a bill solely for purposes that could be accomplished by an action in ejectment. *Hipp* v. *Babin*, 19 How. 271; *Lewis* v. *Cocks*, 23 Wall. 466; *Ellis* v. *Davis*, 109 U. S. 485; *Killian* v. *Ebbinghaus*, 110 U. S. 568; *United States* v. *Wilson*, 118 U. S. 86; *Speigle* v. *Meredith*, 4 Bissell, 120.

II. The Circuit Court of the United States has no jurisdiction of a suit between parties who are citizens of the same State. *Van Antwerp* v. *Hulburd*, 8 Blatchford, 285; *Livingston* v. *Van Ingen*, 1 Paine, 45; *Merserole* v. *Union Paper Collar Co.*, 6 Blatchford, 356.

III. That the bill cannot be sustained against the defendant as a bill of peace, is fully established by the following points and authorities. In regard to bills of peace between single adverse claimants, it may now be regarded as settled that, unless the title has been established at law, except where the rule has been changed by statute, the court will not interfere. 3 Pomeroy's Eq. Jur. § 1394. Possession as well as an established legal title is necessary to the maintenance of a bill of peace of this class. 3 Pomeroy's Eq. Jur. §§ 1394, 1396; *Orton* v. *Smith*, 18 How. 263.

That this action cannot be maintained as a suit to quiet

the plaintiff's title, and to declare that the defendant has not and never had any interest whatever in the lands described in complainant's bill, is evident from the well-known rule that jurisdiction is only exercised by courts of equity when the estate or interest to be protected is equitable in its nature, or when the remedies at law are inadequate where the estate or interest is legal.

Whether or not the jurisdiction will be exercised depends upon the fact that the estate or interest to be protected is equitable in its nature, or that the remedies at law are inadequate, where the estate or interest is legal — a party being left to his legal remedy where his estate or interest is legal in its nature, and full and complete justice can thereby be done. *De Witt* v. *Hays*, 2 California, 463; *S. C.* 56 Am. Dec. 352; *Hinchley* v. *Greaney*, 118 Mass. 595.

The remedy by injunction to yield up or quit possession of land, and the writ of possession to summarily remove a defendant from land, are writs which are only granted by, and issued out of courts of equity, in aid of a decree in chancery, where there has been a foreclosure of equity of redemption, and a sale of mortgaged premises been decreed, and the defendant or any person who has come into possession under him, pending the suit, refuses to deliver up the possession, on demand, to the purchaser under the decree.

The principle may be stated in its broadest generality, that in cases where the primary right, interest, or estate, to be maintained, protected, or redressed, is a legal one, and a court of law can do as complete justice to the matter in controversy both with respect to the relief granted and to the modes of procedure by which such relief is conferred, as could be done by a court of equity, equity will not interfere even with those peculiar remedies which are administered by it alone, such as injunction, cancellation, and the like, much less with those remedies which are administered both by it and the law, and which, therefore, belong to the concurrent jurisdiction. *Southampton Dock Co.* v. *Southampton &c. Harbor Board*, L. R. 11 Eq. 254. And the same doctrine applies under the reformed system of procedure. *Kyle* v. *Frost*, 29

Indiana, 382. See also, sustaining the general principle as stated above, *Grand Chute* v. *Winegar*, 15 Wall. 373; *Insurance Co.* v. *Bailey*, 13 Wall. 616; *Hipp* v. *Babin*, 19 How. 271.

IV. The court is without jurisdiction to hear and determine the merits of this case, because both parties are citizens of the State of Nebraska, as alleged in the bill; — because complainant shows by his bill that his remedy is at law, by ejectment instead of in equity; — because complainant has not made such a case by his bill as would authorize the court to hear and determine the same, as a court of equity, even though complainant and defendant were citizens of different States.

V. We contend that, as no steps were ever taken by Morton, under judicial proceedings, or otherwise, to disturb the actual possession of Allen Root, the statute of limitations was neither suspended nor interrupted.

The Supreme Court of Missouri, in case of *Mabary* v. *Dollarhide*, 98 Missouri, 198, held that a judgment in ejectment, not followed by any writ, nor by taking possession under it, does not suspend the statute of limitations.

The Supreme Court of Kentucky, in the case of *Smith* v. *Hornback*, 4 Littell, 232, held that a judgment in ejectment, never executed, and under which possession has never been demanded, does not stop the running of the statute of limitations. The case of *Morton* v. *Root* was a void proceeding resulting in May, 1873, in a void decree to remove a cloud from Morton's supposed title, with which he had parted before his bill was filed, and a title which he did not have when the final decree was rendered. There was nothing in the decree that contemplated disturbing the continuity of Root's possession. In *Smith* v. *Trabue*, 1 McLean, 87, it was held that a judgment in an action of ejectment against a defendant, who holds adversely, does not of itself suspend the statute of limitations. To do this there must be a change of possession. The following cases support the same view: *Dol* v. *Reynolds*, 27 Alabama, 354; *Jackson* v. *Haviland*, 13 Johns. 229.

The decree quieting the title in Morton would not break the continuity of Root's possession, nor stop the running of the statute of limitations.

VI. Waiving, then, all other questions, we regard the adverse possession of this defendant, and those under whom he claims, as conclusive upon the rights of the plaintiff. In the case of *Ellis* v. *Murray*, 28 Mississippi, 129, under the third section of the act of limitations, passed in 1844, it was held that "actual adverse possession for ten years vests a full and complete title to the land in possession; and a party having had such possession might sue for the recovery of it at any time within the period limited in the first section, without further evidence of his title than that he had had ten years in actual adverse possession; that it was intended to secure a right of property by the possession of ten years." See also *Beaupland* v. *McKeen*, 28 Penn. St. 124; *S. C.* 70 Am. Dec. 115; *Hoey* v. *Furman*, 1 Penn. St. 295; *S. C.* 44 Am. Dec. 134; *Webbs* v. *Hynes*, 9 B. Mon. 388; *S. C.* 50 Am. Dec. 515; *Clement* v. *Perry*, 34 Iowa, 564; *Clark* v. *Potter*, 32 Ohio St. 49; *Noyes* v. *Dyer*, 25 Maine, 468; *Spear* v. *Ralph*, 14 Vermont, 400.

VII. Oliver P. Morton by his deed on the 19th day of August, 1869, conveyed the property in controversy to William S. T. Morton. Said deed was a valid one under the laws of Indiana, where no witnesses were required, and being valid where made was valid under the laws of Nebraska. *Green* v. *Gross*, 12 Nebraska, 117, 123.

Oliver P. Morton had no title at any time during the pendency of his suit against Allen Root; the court, therefore, was without jurisdiction to render its decree of May 8, 1873. The decree in that case having been obtained on the representation that Morton was the owner of the property, was a fraud upon the court, and the decree being fraudulent can be defended against by Root in this suit. See *Marshall* v. *McGee*, 33 Hun, 354.

*Mr. Burton N. Harrison,* (with whom was *Mr. James L. Woolworth* on the brief,) for appellee.

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court.

It is not necessary to notice or consider separately the numerous assignments of error presented by the appellant. They may be reduced to the following propositions: (1) That the court had no jurisdiction to entertain the bill, because it is in the nature of an ejectment bill, and that there is a full and adequate remedy at law; (2) that there was fraud on the part of Morton and his attorney in obtaining the former decree of 1873 by concealing the fact that Morton, before the beginning of his suit against defendant, had transferred the premises to his brother, William S. T. Morton; (3) that there was such defective description of the premises, in the Morton suit and the original decree, as rendered that decree inoperative to vest the title of the land in controversy; and (4) the defendant's adverse possession of the property.

In support of the assignments of error covered by the first proposition, it is urged on behalf of appellant that the suit should be treated and regarded as an ejectment bill to recover the possession of real estate, such as a court of equity cannot entertain in favor of a party holding a legal title like that which the complainant asserts. It is undoubtedly true that a court of equity will not ordinarily entertain a bill solely for the purpose of establishing the title of a party to real estate, or for the recovery of possession thereof, as these objects can generally be accomplished by an action of ejectment at law. *Hipp* v. *Babin,* 19 How. 271; *Lewis* v. *Cocks,* 23 Wall. 466; *Ellis* v. *Davis,* 109 U. S. 485; *Killian* v. *Ebbinghaus,* 110 U. S. 568; *Fussell* v. *Gregg,* 113 U. S. 550, 554.

If the bill in the present case could be properly considered as an ejectment bill, the objection taken thereto by the defendant would be fatal to the proceeding; but instead of being a bill of this character it is clearly a supplemental and ancillary bill, such as the court had jurisdiction to entertain. *Shields* v. *Thomas,* 18 How. 253, 262; *Thompson* v. *Maxwell,* 95 U. S. 391, 399; Story's Eq. Plead. §§ 335, 338, 339, 429.

It is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judgments, which remain unreversed, when the subject-matter and the parties

are the same in both proceedings. The general rule upon the subject is thus stated in Story's Equity Pleading, (9th ed.,) § 338:

"A supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be either in aid of the decree, that it may be carried fully into execution; or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defence made to it; or to bring forward parties before the court, or it may be used to impeach the decree, which is the peculiar case of a supplemental bill, in the nature of a bill of review, of which we shall treat hereafter. But where a supplemental bill is brought in aid of a decree, it is merely to carry out and to give fuller effect to that decree, and not to obtain relief of a different kind on a different principle; the latter being the province of a supplementary bill in the nature of a bill of review, which cannot be filed without the leave of the court."

Under this principle Morton could undoubtedly have brought the bill to carry into effect the decree rendered in his favor against Root, and it is equally clear that his assignee, or privy in estate, has a right to the same relief that Morton could have asserted. On this subject it is stated in Story's Equity Pleading, § 429: "Sometimes such a bill is exhibited by a person who was not a party, or who does not claim under any party to the original decree; but who claims in a similar interest, or who is unable to entertain the determination of his own rights, till the decree is carried into execution. *Or it may be brought by or against any person claiming as assignee of a party to the decree.*" The appellee in the present case occupies that position, and he should not, any more than Morton, to whose rights he has succeeded, be put to the necessity of instituting an original or independent suit against Root, and relitigate the same questions which were involved in the former proceeding.

The jurisdiction of courts of equity to interfere and effectuate their own decrees by injunctions or writs of assistance in order to avoid the relitigation of questions once settled be-

tween the same parties, is well settled. Story's Eq. Jur. § 959; *Kershaw* v. *Thompson*, 4 Johns. Ch. 609, 612; *Schenck* v. *Conover*, 13 N. J. Eq. (2 Beasley) 220; *Buffum's case*, 13 N. H. 14; *Shepherd* v. *Towgood*, Tur. & Rus. 379; *Davis* v. *Bluck*, 6 Beav. 393. In *Kershaw* v. *Thompson*, the authorities are fully reviewed by Chancellor Kent, and need not be reëxamined here.

It is said, however, on behalf of the appellant, that the original decree only undertook to remove the cloud upon the title, and did not deal with the subject of possession of the premises, and that the present bill, in seeking to have possession delivered up, proposes to deal with what was not concluded by the former decree. This is manifestly a misconception of the force of the original decree, which established and concluded Morton's title as against any claim of the appellant, and thereby necessarily included and carried with it the right of possession to the premises as effectually as if the defendant had himself conveyed the same. The decree in its legal effect and operation entitled Morton to the possession of the property, and that right passed to the appellee as privy in estate.

In *Montgomery* v. *Tutt*, 11 California, 190, there was a decree of sale, which did not require or provide for the delivery of possession of the premises to the purchaser. Subsequently the defendant refused to surrender possession, and a writ of assistance was sought by the purchaser to place him in possession of the premises under the master's deed. Field, J., delivering the opinion of the court, said:

"The power of the court to issue the judicial writ, or to make the order and enforce the same by a writ of assistance, rests upon the obvious principle that the power of the court to afford a remedy must be coextensive with its jurisdiction over the subject-matter. Where the court possesses jurisdiction to make a decree, it possesses the power to enforce its execution. It is true that in the present case the decree does not contain a direction that the possession of the premises be delivered to the purchaser. It is usual to insert a clause to that effect, but it is not essential. It is necessarily implied in the direc-

tion for the sale and execution of a deed. The title held by the mortgagor passes under the decree to the purchaser upon the consummation of the sale by the master's or sheriff's deed. As against all the parties to the suit, the title is gone; and, as the right to the possession, as against them, follows the title, it would be a useless and vexatious course to require the purchaser to obtain such possession by another suit. Such is not the course of procedure adopted by a court of equity. When that court adjudges a title to either real or personal property, to be in one as against another, it enforces its judgment by giving the enjoyment of the right to the party in whose favor it has been decided."

The principle thus laid down is directly applicable to the present case.

The bill being ancillary to the original proceeding of Morton against Root, and supplementary to the decree rendered therein, can be maintained without reference to the citizenship or residence of the parties. There is consequently no force in the objection that the court below had no jurisdiction in this case because the appellee and the appellant were both citizens of Nebraska. *Krippendorf* v. *Hyde*, 110 U. S. 276; *Pacific Railroad* v. *Missouri Pacific Railway*, 111 U. S. 505.

It is next contended on the part of the appellant that the decree sought to be carried into execution is void because there was fraud on the part of Morton in concealing from the court the fact that he had transferred the premises in August, 1869, to his brother, William S. T. Morton. That conveyance, as set up in the answer, was duly recorded in the register's office of Douglas County prior to the filing of Morton's bill against the appellant. It is not shown in the answer why the appellant did not avail himself in the former trial of this transfer of which he had constructive notice. Nor does it appear from any averments in the answer, or from the proofs, that his rights were in any way prejudiced or affected thereby. He was not prevented by that transfer from exhibiting fully his own case, or setting up his superior title to the premises, which was the subject-matter of the contest between Morton and himself,

The appellant · could not by a direct proceeding have impeached the former decree for this alleged fraud, because, even if it were sufficient to invalidate that decree, he shows no . reason why it was not interposed or set up in the former suit. The facts set up in the answer relating to the conveyance of 1869 from Morton to his brother do not, of themselves, constitute such a fraud as would be sufficient to vacate the decree in a direct proceeding to impeach it, and certainly it cannot be collaterally attacked in. an answer, as the appellant has sought to do, after such a lapse of time, and with no valid excuse given for the delay. *Hammond* v. *Hopkins,* 143 U. S. 224.

But aside from this objection to this defence, it is clearly established by the proof in the cause that, before Morton instituted his suit against . Root, a writing was executed between himself and his brother, William S. T. Morton, which operated to vacate the conveyance of August, 1869, and to revest the title to the property in Oliver P. Morton, so that there was actually no lack of title to the premises in Oliver P. Morton at the date of the institution of his suit against Root. The objection interposed by the defendant, therefore, is clearly wanting in any force or merit.

In respect to the next position assumed by the defendant, that the description of the property was so defective as not to vest Morton with any title to the premises in controversy, it is sufficient to say that the same point was set up in the former suit, but was overruled, because the testimony given by surveyors clearly established that the omission of the word . *east* from the second call of the description in no way affected the identification of the property, and that by reversing the calls the word *east* would be necessarily included in · the description. The same testimony, in substance, was introduced in this case, and established that the description in the sheriff's deed to Morton fully identified the land in question.

As to the remaining contention, that the appellant had been in adverse possession of the premises since 1869, it appears from the proof in the cause that he did not reënter or take

possession thereof until 1888. The statute of limitations, therefore, does not constitute any bar to the complainant's right to maintain the bill. But aside from this, the appellant stands in the same position now that he did in the former suit, when it was decreed that he had no right, title, or interest in the property. If, since that decree, he has enclosed a part of the land, cut wood from it, or cultivated it, he would be treated and considered as holding it in subordination to the title of Morton and his privy in estate, until he gave notice that his holding was adverse, and in the assertion of actual ownership in himself. In his position he could not have asserted adverse possession after the decree against him, without bringing express notice to Morton or his vendees that he was claiming adversely. Without such notice the length of time intervening between the decree and the institution of the present suit would give him no better right than he previously possessed; and his holding possession would, under the authorities, be treated as in subordination to the title of the real owner. This is a well established rule. *Jackson* v. *Bowen*, 1 Wend. 341; *Burhans* v. *Van Zandt*, 7 Barb. 91; *Ronan* v. *Meyer*, 84 Indiana, 390; *Jeffery* v. *Hursh*, 45 Michigan, 59; *Jackson* v. *Sternbergh*, 1 Johns. Cas. 153; *Doyle* v. *Mellen*, 15 R. I. 523; *Zeller's Lessee* v. *Eckert*, 4 How. 289.

We are of opinion that the decree below was clearly correct, and should be                                   *Affirmed.*