## COOPERATIVE TRANSIT CO. v. WEST PENN ELECTRIC CO. et al.

### No. 118-W.

District Court, N. D. West Virginia.

Aug. 5, 1942.

J. T. McCamic, of Wheeling, W. Va., for plaintiff.

Austin V. Wood and John D. Phillips, both of Wheeling, W. Va., for West Penn Electric Co., West Penn Rys. Co., Tri-State Improvement Co., West Penn System Construction Co., West Penn Securities Department, Inc., and Centre Foundry & Machine Co., defendants.

Chesney M. Carney, of Clarksburg, W. Va., for Cleveland Trust Co., defendant.

Wm. J. Gompers, of Wheeling, W. Va., for Clara Narrigan, defendant.

BAKER, District Judge.

This case is before the Court on a motion, by West Penn Electric Company, West Penn Railways Company, Tri-State Improvement Company, West Penn System Construction Company, West Penn Securities Department, Inc., and Centre Foundry

& Machine Company, to dismiss the complaint, and on a similar motion by Clara Narrigan.

 Both motions are based upon an alleged lack of Federal Jurisdiction. The motion of the West Penn Electric Company, et al., also assigned as an additional ground a tenant's estoppel to question the landlord's title. This ground was not urged in oral argument, and was specifically abandoned in defendants' reply brief, and so will not be considered here.

 On the motions now pending all facts pleaded in the Complaint must be taken as true. This, of course, does not apply to conclusions of law which the pleader may have drawn from those facts.

### Facts Alleged in Complaint.

To understand the questions presented, it may be well to first state the facts alleged in the complaint.

Wheeling Traction Company was for many years engaged in the operation of street-car lines in and about Wheeling, West Virginia. On January 1, 1901, it executed a mortgage that in very broad and comprehensive terms, covered the assets of the company. The mortgage contained an after-acquired property clause, the following language being used in part:

"Intending to include all street railways, * * *

"Also all corporate property, real and personal * * * whether the said property and things * * * are now owned or shall hereafter be acquired by the Traction Company.

"And also all the estate, right, title, interest, property, possessions, claim and demand whatsoever, as well in law as in equity. * * *

"It is intended hereby to convey all property of any sort or nature whatsoever, whether real, personal or mixed, which the Traction Company now owns, or which it may hereafter acquire; * * * *"

About 1912, the West Penn Railways Company owned all the stock of the Wheeling Traction Company. From this time until 1931 the Traction Company was managed by the West Penn Railways Company, as part of the so-called "West Penn System." This System consisted of several corporations with practically identical ownership and direction.

In 1916 the Traction Company needed a new car barn. A plot of land, known as the Gilchrist property, was selected as a site therefor. Clifford P. Billings, Vice-President and General Manager of the Company, authorized a real estate agent to acquire the same, and reported to the Board of Directors that it had been purchased for $43,200, $10,000 to be paid in cash and four notes given for $8,300 each. The West Penn Railways Company paid the $10,000 and an agent's commission of $3,000. Title to the land was taken in the name of Billings. He later conveyed it to the Tri-State Improvement Company, who conveyed it to the West Penn System Construction Company, who conveyed it to West Penn Securities Department, Inc. All of these companies were part of the West Penn System.

The West Penn Securities Department, Inc., conveyed part of the property to Centre Foundry & Machine Company, and the rest to Clara Narrigan.

Tri-State Improvement Company, West Penn System Construction Company, West Penn Securities Department, Inc., Centre Foundry and Machine Company, and Clara Narrigan, are all citizens and residents of West Virginia. The plaintiff, Cooperative Transit Company is a West Virginia corporation.

On May 19, 1920, the Traction Company reimbursed the West Penn Railways Company for its advance of $13,000, and on August 31, 1920, the Traction Company made a charge on its books against the Tri-State Improvement Company for about $25,000, which represented payments made on this purchase. The Traction Company continued to make advances toward this purchase. In 1923 a car barn was erected on this property at a cost of $50,950, and other improvements totaling $30,000 were made. All this was paid for with Traction Company money. In April of 1924 a financial officer of the West Penn Railways Company stated: "* * * it would be well to allow the Gilchrist property to remain in the name of the Tri-State Improvement Company and to have the Wheeling Traction Company bill the Tri-State Improvement Company for all improvements and extensions actually made on the property for the car barn and other services. I have in mind the approach of the time when the Wheeling bonds become due * * *."

In 1924 a dividend of 15½% was declared on the Traction Company stock. All of this, amounting to $350,445, was

payable to the West Penn Railways Company as sole stockholder. To get the funds for such dividend, the West Penn Railways Company loaned the Traction Company $250,000, and took its note therefor.

On May 1, 1928, a charge of $144,767.80, the amount spent by the Traction Company on the car barn property, was transferred to the West Penn Railways Company and credited against the open account the Traction Company owed it.

In 1931 foreclosure proceedings were begun in this Court, which resulted in the winding up of the affairs of the Traction Company. In this proceeding the Cooperative Transit Company purchased the property of the Traction Company and on July 31, 1933, received a Special Master's deed therefor. A part of the property so purchased was described in the decree of sale as "all the property and assets of the Traction Company hereinbefore found to be covered by or embraced in the lien of the said Mortgage Deed of Trust, dated Jan. 1, 1901." The mortgage had been decreed to embrace "all corporate property, real and personal."

Since July 31, 1933, the Cooperative Transit Company has operated the property so acquired as a street railway.

After May 1, 1928, the Traction Company paid the Tri-State Improvement Company, as rent for the car barn, $1,000 per month. This continued until the foreclosure proceedings. The Receiver in those proceedings paid no rent.

From 1933 to 1935, the Cooperative Transit Company used the car barn without payment of any rent. In 1935 it entered into an agreement with Pan Handle Traction Co. (a connecting street railway) whereby the latter was to pay the rent for the car barn, and from May 1, 1935, to October 31, 1941, the Cooperative Transit Company paid the West Penn Securities Department, Inc., $250 per month, rent for this barn.

The Centre Foundry & Machine Company notified the Cooperative Transit Company to vacate the car barn property on December 31, 1941. This action was filed December 29, 1941.

The complaint asks that the transactions, whereby title to the property came into the Centre Foundry & Machine Company and Clara Narrigan, be declared void; that the "appropriate parties" be required to convey title to the plaintiff; that an accounting be had for rent paid, and that the Centre Foundry and Machine Company be enjoined from interfering with Cooperative's possession.

### Federal Jurisdiction.

There is no ground for Federal Jurisdiction asserted other than "the said Cooperative Transit Company was a purchaser of certain property under a judicial sale in the consolidated causes (the foreclosure and receivership) in this Court."

The complaint alleges that "The matter in controversy exceeds, exclusive of costs, the sum of $3,000.00;" but since the plaintiff and the present holders of the title to the property involved are all residents of West Virginia, this allegation would seem to be surplusage. Obviously there is no diversity of citizenship. If jurisdiction exists at all, it must be based on the theory that the present action is ancillary to the old foreclosure proceeding.

The plaintiff argues that the car barn property was acquired under circumstances that vested equitable title in the Traction Company; that this property automatically came within the lien of the mortgage, by virtue of the after-acquired property clause; that it was therefore included in the decree of sale; and that this action merely seeks to do that which should have been done in the foreclosure suit.

If this action is ancillary to the old suit, it would seem that under Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123, and numerous cases following it, jurisdiction should be sustained.

But in this case three matters exist which prevent this from being considered as ancillary to the prior suit.

First of all, new necessary parties are added. Centre Foundry and Machine Company and Clara Narrigan were not and could not have been parties to the prior litigation. They are not in any way bound by the decrees therein. Second, the exact property here concerned with was not before the Court in the former suit. Third, the question of the ownership of such property is here raised for the first time. We have then, a proceeding which brings in new parties and raises new questions, regarding new property. Under such circumstances, I feel that the action cannot be considered as ancillary to the prior litigation, but must be considered a new suit. This position seems to be sustained by New Orleans Land Co. v. Leader Re-

alty Co., 255 U.S. 266, 41 S.Ct. 259, 65 L. Ed. 621.

This being a new proceeding, there is no basis for Federal Jurisdiction, and the motions to dismiss must be sustained.

Since the reasons for sustaining these motions are such that cannot be changed by any amendment to the pleadings, an order will go, dismissing the action.