**CURTIS et al. v. O'LEARY et al.**

No. 12252.

Circuit Court of Appeals, Eighth Circuit.

Nov. 12, 1942.

Rehearing Denied Dec. 5, 1942.

Paul L. Martin, of Omaha, Neb. (Arthur R. Wells and Winthrop B. Lane, both of Omaha, Neb., on the brief), for appellants.

Paul R. Stinson, of Kansas, Mo., and Yale C. Holland, of Omaha, Neb., for appellees.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a summary judgment for the plaintiffs, under Rule 56 of the Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c, in an action brought by Dorman H. O'Leary and

Stern Brothers & Co., a corporation, against H. F. Curtis, Fred P. Curtis, Lewis C. Curtis and other minority stockholders of the Lyman-Richey Sand and Gravel Corporation. The purpose of the action was to secure an adjudication that the plaintiff O'Leary, as trustee for the Vinton Corporation, is the absolute owner of 23,-252 shares of the common stock of the Lyman-Richey Sand and Gravel Corporation, and to enjoin the defendants from challenging or interfering with O'Leary's ownership of these shares of stock, and from bringing threatened suits based upon the claim that, under an oral agreement, the shares are merely held as security and are subject to redemption. H. F. Curtis, Fred P. Curtis, and Lewis C. Curtis, who were defendants below, and Lyman-Richey Sand and Gravel Corporation, which intervened, have appealed. They assert that, under the pleadings and the undisputed facts disclosed by the record, the entry of a summary judgment was not justified.

The facts out of which the controversy arose are, in substance, as follows: The Lyman-Richey Sand and Gravel Company, a Nebraska corporation (hereinafter called the debtor), being in financial difficulties, on December 6, 1934, filed a petition for reorganization under Section 77B of the Bankruptcy Act, 48 Stat. 912, 11 U.S.C.A. § 207, in the court below. H. F. Curtis and his sons, Fred P. Curtis and Lewis C. Curtis (who will be referred to as "the Curtises"), were directors and officers of the debtor and the owners of more than 80% of its outstanding stock. The court appointed Fred P. Curtis, Lewis C. Curtis, and Mary A. Mullen trustees of the debtor, pending reorganization, and appointed G. Keyes Page, a vice-president of Stern Brothers & Co., reorganization manager. Stern Brothers & Co. represented bondholders of the debtor in the reorganization proceedings. It had acted as fiscal agent for the debtor and had underwritten its bonds.

On May 18, 1935, Page filed a plan for reorganization of the debtor, which bore the approval of the debtor and of the holders of more than 77% of its outstanding stock, including the Curtises. The plan called for the organization of the Lyman-Richey Sand and Gravel Corporation (hereinafter referred to as the new corporation) to take over all of the assets of the debtor and to assume certain of its liabilities, which included the bonds of the debtor, the bonds to bear interest at a re-

duced rate and to have extended maturities. The plan provided that general creditors whose claims were allowed should receive noncumulative preferred stock of the new corporation in exchange for their claims, and that a claim of the United States for approximately $82,000 should be compromised for $20,000, to be paid in four annual instalments by the new corporation. To supply the necessary working capital for the new corporation, the plan provided as follows:

"The Reorganization Manager will be immediately authorized to sell 500 shares of 6% Prior Preference Stock at $100 per share, and to also sell and deliver at par to the purchasers of the 6% Prior Preference Stock 23,252 shares of the authorized common capital stock of the Corporation.
*     *     *     *     *

"Common Capital Stock. The New Corporation will have authorized 42,250 shares of its common capital stock of the par value of one [per] cent per share, which will be issued in the following manner: 18,998 shares to the holders of the present outstanding capital stock of Lyman-Richey Sand and Gravel Company; 23,252 shares to the purchasers of the 6% Prior Preference Stock of the New Corporation. Each share of common stock shall be entitled to one vote on all matters. *   *   *"

The plan also provided that all voting rights in the new corporation "are vested exclusively with the holders of common capital stock." Under the plan, the prior preference stock was redeemable. There was no provision for the redemption of common stock.

After a hearing, the court, on July 2, 1935, entered an order approving the plan of reorganization and directing its execution. No objection to the plan was filed by any of the appellants, and no appeal was taken from the order approving it.

On July 18, 1935, Page, as reorganization manager, and the debtor, by its president, H. F. Curtis, filed a report stating that the plan of reorganization had been carried out, and prayed for the entry of a final decree. The report showed that the new corporation had been organized, and stated:

"500 shares of the 6% prior preference stock of the par value of $100.00 per share have been issued to G. Keyes Page and the new corporation has been paid therefor the sum of $50,000.00 in cash.

"23,252 shares of the authorized common capital stock of the new corporation of the par value of One Cent per share have been issued to G. Keyes Page and the Corporation has received therefor the sum of $232.52."

There was a hearing upon the report and petition before the court, with respect to fees and allowances. Counsel for the reorganization manager stated what had been done in carrying out the plan of reorganization. Among other things, he said: "The old management receives approximately 45% of the common stock. Those that put in the new money receive preferred stock [prior preference stock] to an equivalent of the new money, plus 55% of the common stock. The new officers are Mr. Fred Curtis, as President, Mr. L. C. Curtis as Vice President, Mr. Griffis as Treasurer and Mr. Burke as Secretary. The directors are the two Curtises and Mr. Page." The court then said to H. F. Curtis, president of the debtor: "Now, Mr. Curtis, you have heard the statements here. Do you have comments or objections to interpose?" Mr. Curtis answered, "I do not, Judge." The court said: "You concur in what has been represented to the Court, do you?" The reply was, "I do."

The court, on July 18, 1935, entered its final decree, in which it approved the report of the debtor and the reorganization manager; declared that the plan of reorganization had been executed; discharged the debtor from its debts; discharged the trustees, and released their sureties; enjoined creditors and stockholders of the debtor from bringing suit against the new corporation, or its assets, based upon claims against the debtor, except such as the new corporation had expressly assumed pursuant to the plan; terminated the reorganization proceedings, and reserved jurisdiction only with respect to two pending matters which had not been decided. No appeal was taken from the final decree.

The $50,000 paid by Page for the 500 shares of the prior preference stock of the new corporation, and the $232.52 paid by him for the 23,252 shares of its common stock, had been furnished by the Vinton Corporation, for which Page acted as trustee in acquiring the stock. As long as Page continued his connection with Stern Brothers & Co., he continued to hold this stock and to act as a director of the new corporation. When he severed his connection with Stern Brothers & Co., he was succeeded, as a vice-president of Stern Brothers & Co. and as a director of the new corporation, by O'Leary, to whom the stock was transferred and who held it in trust for the Vinton Corporation.

Lewis C. Curtis and Fred P. Curtis, two of the three directors of the new corporation, on April 15, 1941, caused its Board of Directors to adopt a resolution providing for the redemption of the 500 shares of prior preference stock, on condition that the 23,252 shares of common stock, held by O'Leary, be returned to the new corporation by the purchaser upon payment of $232.50. The resolution recited the existence of an oral agreement between the Curtises and Page whereby the 23,252 shares of common stock sold under the plan of reorganization were subject to cancellation and retirement on payment of $232.52, whenever the $50,000 of prior preference stock was redeemed.

On April 22, 1941, this action was brought. The complaint was captioned in the reorganization proceedings and purported to be an ancillary and dependent bill, although it also asserted diversity of citizenship as a ground of jurisdiction. The complaint set up the reorganization proceedings pursuant to which the 23,252 shares of common stock in suit were sold, the purchase of this stock by Page for the Vinton Corporation, and its transfer to O'Leary. The complaint alleged that the defendants, notwithstanding the provisions of the plan of reorganization and the court's orders and decrees approving the plan, had conspired to destroy the rights of O'Leary and the Vinton Corporation in the stock, by claiming that, prior to the defendants' assent to the plan and prior to its approval by the court, there was a secret understanding between Page and the defendants that the 23,252 shares of common stock sold would be held by the purchaser as security for the redemption of the prior preference stock and would, upon redemption of that stock and the payment of $232.52, be returned to the new corporation. The complaint also alleged that the defendants intended to bring a suit or suits against the plaintiffs to enforce the "pretended oral agreement" with Page; that the Curtises had caused the adoption by the Board of Directors of the new corporation of the resolution before referred to, and were threatening to refuse to recognize the ownership of the stock by O'Leary and the Vinton Corporation

and to deprive them of the right to vote it; and that the defendants were asserting that Stern Brothers & Co. was a party to the "secret agreement" between Page and the Curtises, and were threatening to join Stern Brothers & Co. in the suit or suits which the defendants proposed to bring.

The plaintiffs asked that the court construe and enforce its decrees relating to the sale of the shares of stock in suit, that it quiet the title of O'Leary and the Vinton Corporation, as owners of the stock, against the defendants, and that it restrain the defendants from litigating, as against the plaintiffs and the Vinton Corporation, any matters "heretofore adjudicated in the primary proceeding [reorganization proceeding] in this cause, or litigated or covered by any orders or judgments in this ancillary proceeding."

After the court had overruled a motion of the defendants to docket the case in the reorganization proceedings, to make the Vinton Corporation an ancillary plaintiff, to join the new corporation as a party defendant, to dismiss Stern Brothers & Co. from the proceedings, and to vacate the order approving the plan of reorganization of the debtor and the final decree in the reorganization proceedings, the defendants and the new corporation, which was permitted to intervene, filed answers. The answers were, in substance, the same. They asserted that the language of the plan of reorganization relating to the sale of the 23,252 shares of common stock of the new corporation was ambiguous; that Page had represented to the debtor and to its majority stockholders that Lester T. Sunderland was buying the stock, and had also represented that the provision, in the reorganization plan, for a sale of the 23,-252 shares of common stock was a mere legal form for the protection of the purchaser of the prior preference stock, and that when the prior preference stock was redeemed the common stock would be returned to the new corporation by the purchaser upon payment of one cent per share. The answers also asserted that, in reliance upon the representations of Page, which were believed to be true, and because of the confidence which they had in him and in Stern Brothers & Co., the defendants accepted the plan of reorganization. The defendants and the intervener asked that the court construe the sale of the 23,252 shares of common stock to be a pledge and to permit the redemption of those shares by the intervener. In the alternative, by way of counterclaims, they asked for damages against Stern Brothers & Co. for the fraud of Page.

The plaintiffs filed no further pleadings, but moved for summary judgment and judgment on the pleadings. After a hearing and the submission of evidence, the court concluded that there was no genuine issue as to any material fact presented by the record, and granted summary judgment for the plaintiffs, in accordance with the prayer of their complaint.

The appellants contend that the court erred: (1) In entering a summary judgment, because genuine and material issues of fact were presented by the pleadings and affidavits, and because the court had inherent power to relieve against Page's fraud; (2) in construing the plan of reorganization as calling for a sale of the 23,252 shares of common stock; (3) in ruling that extrinsic evidence was inadmissible to aid in construing the reorganization plan; (4) in ruling that the Curtises entered into a fraudulent secret agreement with Page, thereby barring themselves and the intervener from any relief; (5) in holding that Page was not an agent of the plaintiffs or of the Vinton Corporation; and (6) in enjoining the defendants and the intervener from bringing suits against Stern Brothers & Co.

This action is clearly ancillary to and dependent upon the reorganization proceedings of the debtor, regardless of how it was docketed. It invoked the jurisdiction of the District Court, as a court of bankruptcy, to effectuate its orders and decrees with respect to the sale of 23,252 shares of common stock of the new corporation, pursuant to the plan of reorganization.[1] The plan was not ambiguous

---

[1] See and compare: Local Loan Co. v. Hunt, 292 U.S. 234, 239, 240, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; Riverdale Cotton Mills v. Alabama & Georgia Manufacturing Co., 198 U.S. 188, 194, 25 S.Ct. 629, 49 L.Ed. 1008; Julian v. Central Trust Company, 193 U.S. 93, 112–114, 24 S.Ct. 399, 48 L.Ed. 629; Root v. Woolworth, 150 U.S. 401, 410–412, 14 S.Ct. 136, 37 L.Ed. 1123; Freeman v. Howe, 24 How. 450, 460, 16 L.Ed. 749; Hesselberg v. Ætna Life Ins. Co., 8 Cir., 102 F.2d 23, 27; Holmes v. Rowe, 9 Cir., 97 F.2d 537, 539, 540; Bethke v. Grayburg Oil Co., 5 Cir., 89 F.2d 536, 538, 539; Seaboard Small

in this respect, and called for no construction. The province of construction lies in the domain of ambiguity. United States v. Missouri Pacific R. Co., 278 U.S. 269, 277, 49 S.Ct. 133, 73 L.Ed. 322; Helvering v. Northwestern National Bank & Trust Co. of Minneapolis, 8 Cir., 89 F.2d 553, 556. In Williamson v. Berry, 8 How. 495, 544, 12 L.Ed. 1170, the Supreme Court said: " * * * sale is a word of precise legal import, both at law and in equity. It means at all times, a contract between parties, to give and to pass rights of property for money,—which the buyer pays or promises to pay to the seller for the thing bought and sold." See, also, Butler v. Thomson, 92 U.S. 412, 414, 415, 23 L.Ed. 684; State of Iowa v. McFarland, 110 U.S. 471, 478, 4 S.Ct. 210, 28 L.Ed. 198. That is also the meaning of the word "sale" to those not learned in the law. The plan of reorganization called for a sale of the common stock in suit, and the court directed a sale and confirmed a sale. We think that, unquestionably, the purchaser of the stock acquired an absolute and unconditional title.

■ The appellants were, of course, bound by the orders and decrees of the court approving the plan of reorganization and confirming its execution. Those decrees became final. It is true, as appellants argue, that a court of bankruptcy may, for good cause, modify or vacate its decrees when rights of third persons have not intervened. Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 136–138, 57 S.Ct. 382, 81 L.Ed. 557; Kimm v. Cox, 8 Cir., 130 F.2d 721, opinion filed September 8, 1942. A request that a court of bankruptcy take such action is addressed to the discretion of the court, and a refusal to grant the request is reviewable only for an abuse of discretion. Kimm v. Cox, supra. We think that the court below did not abuse its discretion in declining to modify or vacate its orders in the reorganization proceedings. If the Curtises relied upon representations made by Page as to the meaning of the plan, rather than upon the plain language of the plan, we think they did so at their own risk. Certainly nothing that Page had said about the plan which was not stated in the plan and not authorized by or communicated to the court, would be binding upon it, or would have the effect of modifying the plan or the orders of the court approving it or confirming its execution.

The plan was an entirety, and parties other than the Curtises and the purchaser of the stock in suit were affected by it. All parties to the reorganization proceeding were entitled to be correctly advised as to all provisions of the plan. The general creditors of the debtor who were to take the noncumulative preferred stock of the new corporation, and bondholders whose bonds were assumed by it, were advised by the plan that a majority of the common stock of the new corporation was to be sold to the purchaser of the prior preference stock, which meant that the voting control of the new corporation was to be held by the purchaser and was not to be held by the Curtises, who had had such control over the debtor. That was a matter in which all parties affected had an interest. Obviously, the court in 1941 could not have restored all those affected by the plan to the status occupied by them at the time the plan was approved in 1935.

■ Whether the concealment by the Curtises of the alleged understanding with Page amounted to a fraud upon the court which would bar the appellants from all relief, we think it is unnecessary to decide. The failure of the Curtises to disclose to the court, at the time they consented to the approval of the plan and to the entry of the final decree, their alleged understanding with Page was a clear neglect of their duty to the court and to themselves, which, we think, prevents their present assertions from being given consideration in determining the question of the title acquired by the purchaser to the common stock in suit. Compare, McIntosh v. Wiggins, 8 Cir., 123 F.2d 316, 322, and cases cited.

■ It is our opinion that the issue as to the alleged understanding between the Curtises and Page was not a material issue of fact relative to the title and ownership of the shares of stock in suit, and that the court did not err in granting a summary judgment to O'Leary.

■ The judgment should not have included injunctive relief for Stern Brothers

Loan Corporation v. Ottinger, 4 Cir., 50 F.2d 856, 859, 77 A.L.R. 956; Bull v. Adams, 5 Cir., 17 F.2d 906, 907; Wilson v. Alexander, 5 Cir., 276 F. 875, 879–881; Pell v. McCabe, 2 Cir., 256 F. 512, 515, 516; St. Louis-San Francisco R. Co. v. McElvain, D.C.Mo., 253 F. 123, 128–131; In re Swofford Bros. Dry Goods Co., 8 Cir., 180 F. 549, 554.

& Co. It was not a party to the reorganization proceedings, in which it was merely a representative of the bondholders. It had no interest in the shares of stock in suit, and was not a proper party to this action.

The court below, as a court of bankruptcy, was concededly without jurisdiction to try the issues tendered by the counterclaims of the defendants and the intervener against Stern Brothers & Co.

It seems probable that the injunctive relief granted O'Leary precludes the appellants from bringing suit against O'Leary or the Vinton Corporation for a breach of the alleged oral agreement between the Curtises and Page and for the alleged fraud of Page. It was not necessary for the court, in order to effectuate the decrees entered in the reorganization proceedings, to create such an immunity from suit, and we think the court was without power to do so. Compare, Toucey v. New York Life Insurance Co., 314 U.S. 118, 132–141, 152, 62 S.Ct. 139, 86 L.Ed. 100.

The judgment, in so far as it grants relief to Stern Brothers & Co. and in so far as it enjoins the appellants from bringing suit against O'Leary or the Vinton Corporation for a breach of the alleged oral agreement between the Curtises and Page and for the alleged fraud of Page, is reversed. In all other respects the judgment is affirmed. The case is remanded with directions to dismiss Stern Brothers & Co. as a party plaintiff, and to dismiss the appellants' counterclaims for want of jurisdiction.