## COOPERATIVE TRANSIT CO. v. WEST PENN ELECTRIC CO. et al.

### No. 5010.

Circuit Court of Appeals, Fourth Circuit.

Jan. 2, 1943.

Before SOPER and DOBIE, Circuit Judges, and COLEMAN, District Judge.

Jay T. McCamic, of Wheeling, W. Va. (Charles McCamic, of Wheeling, W. Va., on the brief), for appellant.

John D. Phillips, of Wheeling, W. Va. (Austin V. Wood, Hall, Paul & Phillips, and William J. Gompers, all of Wheeling, W. Va., on the brief), for appellees.

DOBIE, Circuit Judge.

The Cooperative Transit Company (hereinafter called Cooperative) filed a complaint in the United States District Court for the Northern District of West Virginia against the West Penn Electric Company (herein called Penn Electric) and several other defendants. The plaintiff and all the defendants are and were citizens of West Virginia. As the only basis for the jurisdiction of the District Court over the instant proceeding, Cooperative asserts that this proceeding is ancillary to the consolidated causes (in the same court) of Westinghouse Electric and Manufacturing Company, Plaintiff, v. Wheeling Traction Company, Defendant, and Cleveland Trust Company, Plaintiff, v. Wheeling Traction Company, Edward L. Yager, as Receiver of Wheeling Traction Company, the Colonial Trust Company and Westinghouse Electric and Manufacturing Company, Defendants.

A motion to dismiss the instant proceeding, on the ground that it was not ancillary, was duly filed by the defendants. This motion was sustained by the District Judge and the plaintiff, Cooperative, has appealed.

The complaint in the instant proceeding (occupying 34 printed pages in appellant's appendix) is long, complicated and somewhat diffuse. For the purpose of the motion to dismiss, all facts properly pleaded in the complaint must be taken as true.

We adopt the statement of facts, and the analysis of the plaintiff's prayer for relief, set out by the District Judge.

"Wheeling Traction Company was for many years engaged in the operation of street-car lines in and about Wheeling, West Virginia. On January 1, 1901, it executed a mortgage that in very broad and comprehensive terms, covered the assets of the company. The mortgage contained an after-acquired property clause, the following language being used in part:

" 'Intending to include all street railways, * * *

" 'Also all corporate property, real and personal * * * whether the said property and things * * * are now owned or shall hereafter be acquired by the Traction Company.

" 'And also all the estate, right, title, interest, property, possessions, claim and demand whatsoever, as well in law as in equity. * * *

" 'It is intended hereby to convey all property of any sort or nature whatsoever, whether real, personal or mixed, which the Traction Company now owns, or which it may hereafter acquire; * * *'

"About 1912, the West Penn Railways Company owned all the stock of the Wheeling Traction Company. From this time until 1931 the Traction Company was managed by the West Penn Railways Company, as part of the so-called "West Penn System." This System consisted of several corporations with practically identical ownership and direction.

"In 1916 the Traction Company needed a new car barn. A plot of land, known as the Gilchrist property, was selected as a site therefor. Clifford P. Billings, Vice-President and General Manager of the Company, authorized a real estate agent to acquire the same, and reported to the Board of Directors that it had been purchased for $43,200.00, $10,000.00 to be paid in cash and four notes given for $8,300.00 each. The West Penn Railways Company paid the $10,000.00 and an agent's commission of $3,000.00. Title to the land was taken in the name of Billings. He later conveyed it to the Tri-State Improvement Company, who conveyed it to the West Penn System Construction Company, who conveyed it to West Penn Securities Department, Inc. All of these companies were part of the West Penn System.

"The West Penn Securities Department, Inc., conveyed part of the property to Centre Foundry & Machine Company, and the rest to Clara Narrigan.

"Tri-State Improvement Company, West Penn System Construction Company, West Penn Securities Department, Inc., Centre Foundry and Machine Company, and Clara Narrigan, are all citizens and residents ·of West Virginia. The plaintiff, Cooperative Transit Company is a West Virginia corporation.

"On May 19, 1920, the Traction Company reimbursed the West Penn Railways Company for its advance of $13,000.00, and on August 31, 1920, the Traction Company made a charge on its books against the Tri-State Improvement Company for about $25,000.00, which represented payments made on this purchase. The Traction Company continued to make advances toward this purchase. In 1923 a car barn was erected on this property at a cost of $50,-950.00, and other improvements totaling $30,000.00 were made. All this was paid for with Traction Company money. In April of 1924 a financial officer of the West Penn Railways Company stated: '* * * it would be well to allow the Gilchrist property to remain in the name of the Tri-State Improvement Company and to have the Wheeling Traction Company bill the Tri-State Improvement Company for all improvements and extensions actually made on the property for the car barn and other services. I have in mind the approach of the time when the Wheeling bonds become· due * * *.'

"In 1924 a dividend of 15½% was declared on the Tráction Company stock. All of this, amounting to $350,445.00, was payable to the West Penn Railways Company as sole stockholder. To get the funds for such dividend, the West Penn Railways Company loaned the Traction Company $250,000.00, and took its note therefor.

"On May 1, 1928, a charge of $144,767.80, the amount spent by the Traction Company on the car barn property, was transferred to the West Penn Railways Company and credited against the open account the Traction Company owed it.

"In 1931 foreclosure proceedings were begun in this Court, which resulted in the winding up of the affairs of the Traction Company. In this proceeding the Cooperative Transit Company purchased the property of the Traction Company and on July 31, 1933, received a Special Master's deed therefor. A part of the property so purchased was described in the decree of sale as 'all the property and assets of the Traction Company hereinbefore found to be covered by or embraced in the lien of the said Mortgage Deed of Trust, dated Jan. 1, 1901.' The mortgage had been decreed to embrace 'all corporate property, real and personal.'

"Since July 31, 1933, the Cooperative Transit Company has operated the property so acquired as a street railway.

"After May 1, 1928, the Traction Company paid the Tri-State Improvement Company, as rent for the car barn, $1,000.00 per month. This continued until the foreclosure proceedings. The Receiver in those proceedings paid no rent.

"From 1933 to 1935, the Cooperative Transit Company used the car barn without payment of any rent. In 1935 it entered into an agreement with Pan Handle Traction Co. (a connecting street railway) whereby the latter was to pay the rent for the car barn, and from May 1, 1935, to October 31, 1941, the Cooperative Transit Company paid the West Penn Securities Department, Inc., $250.00 per month, rent for this barn.

"The Centre Foundry & Machine Company notified the Cooperative Transit Company to vacate the car barn property on December 31, 1941. This action was filed December 29, 1941.

"The Complaint asks that the transactions, whereby title to the property came into the Centre Foundry & Machine Company and Clara Narrigan, be declared void; that the "appropriate parties" be required to convey title to the plaintiff; that an accounting be had for rent paid, and that the Centre Foundry and Machine Company be enjoined from interfering with Cooperative possession."

It is the contention of Cooperative, plaintiff in the instant proceeding, that the circumstances under which the car barn property was acquired served to vest equitable title thereto in the Wheeling Traction Company; that, by virtue of the after-acquired-property clause, the car barn property thus fell automatically within the terms and lien of the mortgage; that this property was included within the decree of sale; and that, under the Master's deed, Cooperative acquired title to the property. So that .the instant proceeding, Cooperative asserts, is

purely ancillary to the previous consolidated causes, in that this proceeding seeks merely to bring about only that which should have been done in these previous causes, particularly under the decree of foreclosure, the sale and the deed of the Master.

█ The well known theory and philosophy of the ancillary jurisdiction of the United States District Court has previously been stated by the writer of this opinion as follows:

"The District Court, after it has acquired jurisdiction of a case on one of the bases already discussed, has jurisdiction of many matters or proceedings on the ground that these are incidental or ancillary to the principal controversy, though the court would not have, as an original proposition, jurisdiction of such matters standing alone. Since this ancillary jurisdiction obtains by virtue of the relation of the incidental matter to the main case, the citizenship of the parties to, and the amount involved in, the ancillary proceeding are immaterial. This ancillary jurisdiction exists in order that the court may do complete justice in the chief controversy.

"This ancillary jurisdiction, which is quite important, falls generally into one of two classes: (1) Proceedings which are concerned with the pleadings, processes, records, or judgments of the court in the principal case; (2) proceedings which affect property already in the custody or control of the court." Dobie on Federal Procedure, § 84, page 322.

Excellent statements on the philosophy of ancillary jurisdiction may be found in Moore's Federal Practice, Vol. 1, Ch. 8, § 804, p. 462; Ohlinger's Federal Practice, Vol. 1, p. 287; Williams on Federal Practice, 2nd.Ed., p. 275. We think it is clear that the instant proceeding can come only under the first of the two classes outlined above. The property here in question, the car barn property, was never in the custody or control of the court under the previous consolidated causes, and, in connection with these same causes, was never considered, or even thought of, by the court.

We have, of course, no quarrel with the oft-quoted expression of Mr. Justice Sutherland, in Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 93 A.L.R. 195: "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled."

But the instant proceeding is not merely one to set aside or construe a decree, Lacassagne v. Chapuis, 114 U.S. 119, 12 S.Ct. 659, 36 L.Ed. 368. Nor is it one simply for the enforcement of a decree, Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123; Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673.

█ The District Judge, we think, was eminently correct in his decision that the totality of three distinctive features serves to place the instant proceeding in the category of a new civil action, and thus beyond the confines and ambit of the ancillary jurisdiction of the District Court, broad though that jurisdiction, in a proper case, may be.

█ First, this proceeding brings in new parties who are necessary (if, indeed, they be not indispensable) to the complete settlement of the controversy. These were not, and could not have been, parties to the prior litigation. And Centre Foundry and Machine Company and Clara Narrigan claim title to the car barn property as bona fide purchasers for value. In Pittsburgh, C., C. & St. L. Ry. Co. v. Long Island Loan & Trust Co., 172 U.S. 493, 19 S.Ct. 238, 246, 43 L.Ed. 528, it was said: "The rule is well settled that a sale of real estate under judicial proceedings concludes no one who is not in some form a party to such proceedings." See, also, Root v. Woolworth, 150 U.S. 401, 410, 411, 14 S.Ct. 136, 37 L.Ed. 1123; New Orleans Land Co. v. Leader Realty Co., 255 U.S. 266, 267, 41 S.Ct. 259, 65 L.Ed. 621.

Second, the specific parcel of realty, the car barn property, was not (and under the circumstances could not well have been) before the court in the prior action. To this extent, the instant proceeding presents a weaker case in favor of ancillary jurisdiction than New Orleans Land Co. v. Leader Realty Co., supra; for, in the New Orleans Land case, in which ancillary jurisdiction was denied, the same specific parcel of realty was before the court in both proceedings.

█ Third, the issues in the instant proceeding are altogether new. No attempt was made, and could not have been made, in the foreclosure suit, to adjudicate the

724

title or interest of Cooperative in the car barn property as against Centre Foundry & Machine Company and Clara Narrigan. That issue is, in the instant proceeding, injected into the litigation for the first time. See Dunn v. Clarke, 8 Pet. 1, 8, 8 L.Ed. 845; New Orleans Land Co. v. Leader Realty Co., 255 U.S. 266, 268, 41 S.Ct. 259, 65 L.Ed. 621. In Smith v. Chase National Bank, 8 Cir., 84 F.2d 608, 616, the court quoted with approval, and added citations, this extract from Simkins on Federal Practice, § 745:

"If the bill contains matter not before litigated by the same parties standing in the same interests, that is, if new parties are brought in, and new matter charged as a basis of relief, then the bill is 'not ancillary, but an original bill, and cannot be supported by the former suit, but must stand independently on its parties and subject-matter for jurisdiction in the Federal courts."

And see International-Great Northern Ry. Co. v. Binford, 10 F.2d 496, certiorari denied 273 U.S. 694, 47 S.Ct. 91, 71 L.Ed. 844.

We are not impressed by the cases cited in the brief of appellant. On the other hand, the case of New Orleans Land Co. v. Leader Realty Co., 255 U.S. 266, 41 S.Ct. 259, 65 L.Ed. 621, on which appellees heavily rely, seems to us quite in point. The head-note to that case reads:

"In a suit against New Orleans, where jurisdiction rested on diverse citizenship, the District Court, through a receiver, sold certain land to satisfy a money judgment previously recovered by the plaintiff against the city on certain drainage warrants, the sale being decreed upon the ground that under acts of Louisiana the city held the land in trust to secure such warrants. Held, that the proceeding was not in rem, passed only such title as the city had, and afforded no basis for ancillary jurisdiction of a suit in the same court to protect the title sold against a later judgment of the state courts which adjudged it inferior to another title, derived by independent grant from the State, whose holder and its predecessors were not parties to the receivership proceedings."

Finally, the equities in this case do not favor the appellant. It seems a fair inference that Cooperative received all that it intended to acquire, and all that it paid for, under the judicial sale.

In affirming the judgment below, we are holding simply that the District Court lacks jurisdiction of the instant proceeding on the ground that it is an ancillary proceeding. We do not, in any way, intend to preclude further inquiry into the affairs of the Wheeling Traction Company and its relations with holding companies and subsidiary companies, particularly with reference to the car barn property, if all of the necessary parties are brought in, and a suitable legal basis for such an investigation can be found.

For the reasons set out above, we affirm the judgment of the District Court.

Affirmed.