Emerick v. Miller.

---

## EMERICK *v.* MILLER ET AL.

[No. 19,341.   Filed May 21, 1902.   Rehearing denied October 14, 1902.]

MORTGAGES.—*Foreclosure.*—*Possession.*—*Writ of Assistance.*—The circuit court, sitting as a court of equity, has the power to issue the summary writ of assistance to put the purchaser at a mortgage foreclosure sale in possession. *pp. 319-325.*

SAME.— *Foreclosure.*—*Writ of Assistance.*—A writ of assistance will be awarded to the grantee of the purchaser at a mortgage foreclosure sale. *p. 325.*

SAME.—*Proceedings for Writ of Assistance.*—*Answer.*—*Fraud.*—In proceedings for a writ of assistance by one claiming possession of real estate under a mortgage foreclosure sale, an answer by the mortgagor that the decree was procured by fraud is insufficient on demurrer; it not being averred in such answer that suit was pending to set aside such decree, or that such suit was contemplated. *pp. 326-329.*

From Wabash Circuit Court; *U. Z. Wiley*, Special Judge.

Proceeding for a writ of assistance by Harry L. Miller against Louisa G. Emerick. From a decree for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337j Burns 1901. *Affirmed.*

*M. Winfield* and *E. S. Morris*, for appellant.

*John Mitchell, W. B. McClintic, H. P. Loveland* and *R. J. Loveland*, for appellee.

HADLEY, J.—Appellee being the grantee of the purchaser at sheriff's sale in a foreclosure proceeding, and being denied by the judgment defendant possession of a part of the premises purchased, upon notice and motion procured a redocketing of the foreclosure case, and thereupon filed his petition for a writ of assistance. The undisputed facts set forth in the petition are to the effect following: The foreclosure complaint was sufficient; appellant was the sole mortgagor defendant, and was timely and duly summoned to appear thereto; she did not appear, and a decree of foreclosure was duly entered against her, and a sale thereunder of the mortgaged premises was made by the sheriff to Milton Shirk, a judgment plaintiff, in accordance with the law and decree, March 19, 1898, for the full amount of the judgment, principal, interest, and costs. There was no redemption, and the year having expired March 21, 1899, a deed conveying the property was duly executed and delivered by the sheriff to the purchaser. Ten days after the conveyance to Shirk, and the record of his deed in the recorder's office of the county, to wit, April 1, 1899, appellant, who had all the time since the rendition of the decree been a resident of the county, and possessed of knowledge of the decree and sale of her land, filed in the Miami Circuit Court her complaint against the judgment plaintiffs for relief against said decree and sale, for fraud of the plaintiffs in the procurement of the decree. During the formation of the issues in her case, upon motion of the defendants, she was summoned to appear and answer, under oath, certain questions to be propounded to her by the defendants touching the issues. She did appear and make answers which were taken down in shorthand, and when put in longhand she refused to subscribe her name thereto. Her refusal to sign was reported by the defendants to the

court, whereupon the court, on defendants' motion, entered an order against her to show cause why she did not sign said answers, on penalty of a dismissal of her cause. She did not obey said order, and the court thereupon, May 25, 1899, dismissed her suit.

Appellant, in her answer, having admitted the foregoing facts, affirms that she had, at the time the foreclosure suit was commenced, and still has, a meritorious defense thereto, which she neglected to make, by the fraud of the plaintiffs, which defense she sets forth in detail, and that the reason she refused to sign her answers to interrogatories was because she was denied the privilege of first taking the long-hand manuscript thereof with her to read over and submit to her attorney for his counsel; that after the dismissal of her suit for failure to obey the order of the court, to wit, on June 22, 1899, Shirk, the purchaser, conveyed the property by quitclaim deed to appellee Miller, who at the time of his purchase had knowledge of the fraudulent character of the judgment; that she refused, upon Miller's demand, and still refuses, to surrender possession. There is no averment that she has or intends to renew the dismissed action, or take any other step for relief against said decree and sale. This action was commenced on the 11th day of October, 1899. The petitioner's demurrer to the answer was sustained.

The assignment propounds for decision the following questions: (1) Has the circuit court, sitting as a court of equity, since the adoption of our practice code, power to issue the summary writ of assistance to put the purchaser at its foreclosure sale in possession? (2) If the power exists, can it, in any case, be invoked by the grantee of the purchaser? (3) Are the facts exhibited by the answer sufficient in equity to warrant a denial of the writ?

I. Appellant, while conceding that courts of equity, under the old practice, had the power to employ the writ of assistance in the enforcement of their decrees, contends

that by our code of procedure the power has been sup-planted by the remedial modes prescribed by the statute; the argument being that since the legislature has abolished the distinction in pleading and practice between legal and equitable causes, and provided a special remedy, in all cases, for obtaining possession of real estate wrongfully withheld, no other mode can exist by implication. The statute, §249 Burns 1901, provides that "There shall be no distinction in pleading and practice between actions at law and suits in equity; and there shall be but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denomi-nated a civil action." It will be observed that the statute is directed solely to court procedure; to the striking down of the particular names, the technical forms, and classification of actions under the old law; and to the presentation of a scheme supposed to simplify judicial proceedings, whereby the plaintiff is at liberty to state the facts of his case to the court in writing, and if, according to his statement, he ap-pears to be entitled to relief of any kind, legal or equitable, he will have a good complaint, be in the right court, and entitled to receive whatever is justly his.

Simplification of procedure may be said to be the full scope and purpose of the code. The statute does not pre-tend to, nor does it in any sense, abridge the inherent power of the courts, nor affect the rights of parties, or the remedies formerly given for a violation of those rights, further than to change, in some instances, the means by which the rem-edy may be obtained. Neither were the rules of law nor the principles of equity changed by blending in the same form of action, and by being permitted to run together through the same proceeding. *Matlock* v. *Todd,* 25 Ind. 128; *Woodford* v. *Leavenworth,* 14 Ind. 311, 314; Bliss, Code Pl. (3d ed.), §§5, 6, and note 17. Therefore, in the absence of express limitation in the code, we find no rea-son for holding that those rules and principles, which long

Emerick *v.* Miller.

experience found necessary to a dispensation of complete justice in certain cases, may not still be applied to facts which come within the class that gave rise to the remedy.

There is no warrant for construing §1062 Burns 1901, as creating a specific and exclusive remedy for the recovery of possession of real estate under the modified system of pleading and practice. The similar but more formal remedy of ejectment is of very ancient origin, and coexisted with the writ of assistance for a long period before our code was thought of. Both remedies had been found necessary to the full administration of justice, the action of ejectment to courts of law for the settlement of controverted questions relating to possession and possessory titles; and the writ of assistance to courts of equity, in certain cases only, not in aid of their jurisdiction, but to enable them to carry out and make complete the execution of their decrees. Appellant's counsel say in their brief: "As emphasizing our contention that the action for possession, provided in §1062, *supra,* is the only mode in which the possession of real property may be recovered, it is expressly provided in §1096 Burns 1901 that 'the plaintiff shall be entitled to an execution for the possession of his property, in accordance with the provisions of this act, but not otherwise.' " We can not concede that the section quoted adds any strength to appellant's argument, or that it is even pertinent. By reference to the original act (Acts 1881, p. 363) it will appear (1) that the word "act" in the last line should read "article,"—a mistake that found its way into the revision of 1881, and has been adopted by every subsequent compiler; (2) the section occurs under the article or subtitle of the code "Occupying Claimant," and has special and exclusive reference to the conditions upon which the successful plaintiff against the occupying claimant who has improved and enhanced the value of the real estate may have execution for possession.

In *Kershaw* v. *Thompson,* 4 Johns. Ch. 609, Chancellor Kent says: "The distribution of power among the courts would be injudicious, and the administration of justice exceedingly defective, and chargeable with much useless delay and expense, if it were necessary to resort, in the first instance, to a court of equity, and afterwards to a court of law, to obtain a perfect foreclosure of a mortgage. It seems to be absurd to require the assistance of two distinct and separate jurisdictions for one and the same remedy, viz., the foreclosure and possession of the forfeited pledge. But this does not, upon due examination, appear to be the case; and it may be safely laid down as a general rule, that the power to apply the remedy is coextensive with the jurisdiction over the subject-matter. A bill to foreclose the equity of redemption is a suit concerning the realty, and *in rem;* and the power that can dispose of the fee, must control the possession. The parties to the suit are bound by the decree; their interests and rights are concluded by it; and it would be very unfit and unreasonable, that the defendant, whose right and title had been passed upon and foreclosed by the decree, should be able to retain the possession, in despite of the court. This is not the doctrine of the cases, nor the policy of the law." See, also, *Root* v. *Woolworth,* 150 U. S. 401, 411, 14 Sup. Ct. 136, 37 L. Ed. 1123; *Schenck* v. *Conover,* 13 N. J. Eq. 220, 78 Am. Dec. 95; *Aldrich* v. *Sharp,* 3 Scam. (Ill.) 261; *Cochran* v. *Fogler,* 116 Ill. 194, 5 N. E. 383; *Kirsch* v. *Kirsch,* 113 Cal. 56, 63, 45 Pac. 164; 2 Ency. Pl. & Pr., 975.

It is true, in this State we have no longer such a thing as a strict foreclosure of real estate mortgages, such as existed when writs of assistance had their origin, but the underlying principles of the writ remain unchanged. In a strict foreclosure, upon default, the mortgagor was given by the decree a specified time in which to redeem. If he failed to do so within the time fixed, the sale was made by the court's master or commissioner, and effected an abso-

Emerick *v.* Miller.

lute dispossession of title in the mortgagor. The rights of the parties as they then existed having been thus adjudicated, and the mortgaged premises forfeited by the mortgagor, and sold by the court to reimburse the plaintiff, it was deemed that the matter in litigation was not complete, nor the remedy fully realized until the court had placed the purchaser in possession of the thing it had sold him. Under the present system the time accorded the mortgagor for redemption after default is fixed by statute to the certain period of one year after sale, in lieu of an uncertain period, within the discretion of the chancellor, before sale; but the redemption must now be made, if made at all, upon precisely the same terms,—by-payment to the use of the plaintiff of the full amount of the secured debt, principal, interest, and accrued costs. It is true the sheriff now makes the sale and the deed of conveyance; but in the doing of these things he is executing the court's decree, and acting as the officer and hand of the court in every sense that the master so acted under the old practice.

A sale so made is a judicial sale, and the deed of the sheriff executed in pursuance thereof is as effective and conclusive as a conveyance of the title as when *vised* and approved by the chancellor. "It is usual," says Fields, J., in *Montgomery* v. *Tutt,* 11 Cal. 190, "to insert [in the decree] a clause * * * [that possession be delivered to the purchaser], but it is not essential. It is necessarily implied in the direction for the sale and execution of a deed. The title held by the mortgagor, passes under the decree to the purchaser, upon the consummation of the sale by the master's or sheriff's deed. As against all the parties to the suit, the title is gone; and as the right to the possession, as against them, follows the title, it would be an useless and vexatious course to require the purchaser to obtain such possession by another suit."

Moreover, under our present procedure, when the rights of the mortgagor and mortgagee to the pledged property

have been fully adjudicated and settled between them in favor of the mortgagee, and the court orders a sale for the satisfaction of the secured claim, and the sale is made under the process of the court, and the mortgagee becomes the purchaser, as is usually the case, and enters satisfaction of his claim, if at the end of the year, without redemption, the mortgagor still retains possession, and refuses to surrender it to the purchaser, can it be said that the latter has had redress, until he gets possession of that which he had accepted, under the authority of the court, in discharge of his debt? And when at the end of the year for redemption the rights and relations of the parties to the property remain the same as at the rendition of the decree, as between them can there be any reason why the same court, in the same case, should not effectuate its decree by requiring the debtor to surrender that which the court had adjudged he should surrender? It does, indeed, seem unreasonable in such cases that the purchaser shall be required to bring another action on the law side of the court for judgment that the decree of the equity side of the court, shall be obeyed. In the absence of statutory limitation the rule announced by Chancellor Kent "that the power to apply the remedy is coextensive with the jurisdiction over the subject-matter," is unassailable in reason. It seems, also, paradoxical to say, in cases where all the questions between the parties, relating to the title and right of possession, remain settled by the original decree, that the judgment plaintiff has fully realized the remedy awarded him, when required to bring an action of ejectment to get possession of that which the court, in effect, decreed he should have, and be delayed in its enjoyment by the ordinary changes of venue, postponements, and appeals, for an indefinite period.

A writ of assistance is a summary proceeding, and does not admit of a trial of any *bona fide* question as to the right of possession. Any such question that exists by reason of anything not concluded by the original decree, or

Emerick v. Miller.

that has subsequently arisen from the conduct or contract of the parties, must be determined by the ordinary action. The writ issues only when the right to possession by the petitioner is clear, and presupposes that the rights of the parties and privies with respect to the property remain the same as upon the original decree, and such as follow the decree and the sale had thereunder. *Roach* v. *Clark,* 150 Ind. 93, 98, 65 Am. St. 353, and cases cited; *Gilliland* v. *Milligan,* 144 Ind. 154; *Barton* v. *Beatty,* 28 N. J. Eq. 412; *City of San Jose* v. *Fulton,* 45 Cal. 316, 319; *Van Hook* v. *Throckmorton,* 8 Paige 33.

II. There is some diversity of opinion in the American courts as to the right of a grantee of the purchaser to the writ, and a few cases go to the extent of holding that a purchaser not a party to the record will be denied the writ. But as said in the text of Encyclopaedia of Pleading and Practice (Vol. 2, 978): "According to the weight of modern authority, it will be awarded in favor of the grantee of such purchaser. See *Ekings* v. *Murray,* 29 N. J. Eq. 388; *Ketchum* v. *Robinson,* 48 Mich. 618, 12 N. W. 877; *Gibson* v. *Marshall,* 64 Miss. 72, 8 South. 205; *Brown* v. *Betts,* 13 Wend. 29; *McLane* v. *Piaggio,* 24 Fla. 71, 3 South. 823; *Langley* v. *Voll,* 54 Cal. 435; *New York Life Ins. Co.* v. *Rand,* 8 How. Pr. 35; *Root* v. *Woolworth,* 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123; Beach, Mod. Eq. Pr., §§898, 900.

It is clear that a transfer of title will not enlarge the rights of the transferee, nor impair any right to resist the writ, possessed by the tenant in possession against the original purchaser, but we perceive no reason why an assignee or vendee is not entitled to the same relief that his vendor could have asserted. We therefore hold that appellee, having received and exhibited his deed to appellant, and made demand upon her for possession before filing his petition, stood in the shoes of his grantor, Shirk, and entitled to the

same consideration that Shirk himself would have received as a petitioner for the writ while he remained the owner.

III.   Appellant concedes in effect that the foreclosure proceedings were regular, and sufficient to confer title upon the purchaser at the sheriff's sale.   Aside from the assumed want of power of the court to issue a writ of assistance, she grounds her defense to the writ solely upon a latent infirmity in the record, existing by reason of the plaintiff's fraud in the procurement of the original decree.   She also avers in her answer that after appellee's grantor had received the sheriff's deed, and had made demand upon her for possession, she brought an action against the original judgment plaintiffs, setting forth the fraud by means of which the plaintiffs procured their decree, and prayed the court for a nullification of the decree and sale made thereunder, and that subsequently the court dismissed her said action for her failure and refusal to obey the order of the court to subscribe her deposition.   At the time this petition and answer thereto were filed, appellant had pending no action to be relieved from said decree, and in her answer she stated no purpose or intention to renew or bring such an action.

Appellant, being in possession, relies upon her right to remain passive and to make her resistance whenever the plaintiffs attempted to consummate their alleged fraud by dispossessing her; and she cites *Brake* v. *Payne,* 137 Ind. 479, and other cases of that class, in support of her position.   Her answer to the petition proceeds upon the theory that a party against whom a fraudulent judgment has been rendered, may ignore the judgment, though fair upon its face, for an indefinite period, and successfully defeat the process of the court whenever put in operation against him, without any affirmative action on his part to have the judgment declared invalid.   Such is not the law, nor the holding in the cases referred to.   In the Brake case the defrauded judgment defendant became the aggressor and brought his action to enjoin the levy of execution and en-

forcement of the judgment. No case has been cited, and we presume none can be found, that goes to the extent of holding that a judgment valid upon its face may be wholly disregarded and its enforcement avoided by the debtor without an effort on his part to establish its invalidity in some way known to the law. It is no longer open to doubt, that a question once decided—whether rightfully or wrongfully—by a court of competent jurisdiction, is forever settled between the parties to the record while the judgment which determines the question remains in full force. "So long as that adjudication is allowed to stand," says Mitchell, J., in *Weiss* v. *Guerineau,* 109 Ind. 438, "it must be regarded as speaking the exact truth in respect to the rights and liabilities of all those who were parties to it, so far as their rights, therein involved, existed on the day the decree was given."

It makes no difference in the conclusiveness of a judgment or decree that the same has been procured by fraud. Unassailed, it stands as a verity. If the injured party wishes to be relieved from its forces and effect, he must take some proper step to bring the question of his wrong before the court that imposed it for correction. "A party against whom an unauthorized or inequitable judgment has been obtained," continues Justice Mitchell, "whether by fraud or mistake, can not treat the judgment as invalid until he has taken some proceeding, known to the law, to set it aside, or to secure its modification. Methods for obtaining a new trial, or to review a judgment for material new matter, or for error of law, are pointed out by the statute, and beyond the methods thus prescribed, courts possess inherent power, to an almost unlimited extent, to redress wrongs by modifying or setting aside judgments obtained by fraud or mistake. These methods, however, all contemplate proceedings in the case in which the unauthorized judgment is alleged to have been obtained. They give no countenance to the notion that a judgment, however wrongfully ob-

tained, may be ignored, and the rights of the parties again inquired into, in a collateral proceeding. So long as the judgment stands, not being void, it concludes the parties upon the subjects therein determined *United States* v. *Throckmorton,* 98 U. S. 61, 25 L. Ed. 93; *Krekeler* v. *Ritter,* 62 N. Y. 372; *Aurora City* v. *West,* 7 Wall. 82, 19 L. Ed. 42; *Wiley* v. *Pavey,* 61 Ind. 457, 28 Am. Rep. 677; *Cavanaugh* v. *Smith,* 84 Ind. 380; *Reid* v. *Mitchell,* 93 Ind. 469; Freeman, Judg., §§334, 287-9; Bigelow, Estop., 148-9."

In his section 334 Freeman states the same principles thus: "A party to a judgment feeling himself aggrieved thereby may, in a proper case, either move that it be vacated, or prosecute an appeal or writ of error, or maintain a suit in equity to enjoin its enforcement. These, unless the judgment is void on its face, are the only remedies open to him, and if he resorts to neither, or resorting to any or all he is denied relief, he can not avoid the judgment, when offered in evidence against him, by proving that it ought not to have been pronounced, and was procured by fraud, mistake, perjury, or collusion, or through some agreement entered into by the prevailing party, and which he neglected or refused to perform." Freeman, Judg. (4th ed.) §334. See, also, *Bruce* v. *Osgood,* 154 Ind. 375, and authorities there collated.

Mrs. Emerick has not brought herself within this well established rule. With full knowledge, as she avers, that the court had entered a decree foreclosing her rights in, and ordering a sale of her property for payment of the plaintiff's debt, and that the sale had been made, and the property purchased by Shirk, one of the plaintiffs, she permitted the year for redemption to expire, and the sheriff to convey the property to Shirk. More than this: After Shirk had recorded his deed and demanded and taken possession of part of the property under his sheriff's deed, she instituted her action in the proper court, challenging the

validity of the judgment, and asking that the same be set aside and the sale thereunder vacated. This proper proceeding she voluntarily abandoned by contumaciously putting herself in contempt of the court, with full knowledge that the penalty would be a dismissal of her suit. When thus put out of court, her situation was precisely the same as if she had never questioned the foreclosure proceedings; and her silent defiance of the court's power, continued for more than four months thereafter before the filing of the petition herein, and against the petitioner's demand for possession and profert of his grantor's deed to him must be deemed a disavowal of any intent to attempt the overthrow of the judgment. In the absence of some overt act to impeach the judgment, she had no right to obstruct the proper process of the court in the execution of its decree, and the demurrer was therefore rightfully sustained.

Exceptions were saved to the overruling of motions which present the same questions as above decided, and they are not therefore considered.

Judgment affirmed.