Erica BISHOP, Appellant–Defendant,

v.

**The HOUSING AUTHORITY OF SOUTH BEND, Appellee–Plaintiff.**

No. 71A03–0906–CV–273.

Court of Appeals of Indiana.

Feb. 1, 2010.

Rehearing Denied March 24, 2010.

Kent Hull, Indiana Legal Services, Inc., South Bend, IN, Attorney for Appellant.

Michael P. Palmer, Michael V. Knight, Barnes & Thornburg, LLP, South Bend, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Erica Bishop appeals the trial court's order that granted the Housing Authority of South Bend ("HASB") prejudgment possession of the apartment unit she had leased from HASB.[1]

We affirm.

### ISSUES

1. Whether the order must be reversed because the trial court violated Bishop's right to a jury trial on the issue of immediate possession.

2. Whether the trial court committed reversible error when it refused to issue a transportation order for Bishop's son Derek to testify at the hearing on immediate possession.

3. Whether the order of immediate possession must be reversed because HASB failed to follow U.S. Department of Housing and Urban Development ("HUD") rules in its termination of Bishop' lease.

---

1. We heard oral argument in this matter on January 12, 2010. We commend counsel for their able advocacy.

4. Whether Bishop's lease with HASB was illegal or unconscionable.

5. Whether the termination of Bishop's lease, given the facts presented, violated due process.

### FACTS

The Laurel Court complex consists of forty-one public housing dwelling units. On March 27, 2003, Bishop entered into a lease agreement with HASB for the unit at 1005 Laurel Court for herself and her nine listed children. The eldest listed child was Derek Bishop ("Derek"), born June 23, 1989. On March 19, 2006, she gave birth to a tenth child. At recertification[2] on February 21, 2008, Bishop declared herself and her ten children to constitute the household residing in her leased five-bedroom unit. Bishop's unit was one of forty-nine public housing units in Laurel Court.

The lease specified that "the household members listed" in the lease were "the only persons ... permitted to reside" in the unit, and that as the Resident, Bishop

SHALL BE RESPONSIBLE FOR THE ACTIONS OF ALL HOUSEHOLD MEMBERS AND ALL GUESTS OF HOUSEHOLD MEMBERS, AND THAT ANY VIOLATIONS OF THIS LEASE BY SUCH PERSONS SHALL BE GROUNDS FOR TERMINATION OF THIS LEASE AND EVICTION OF ALL HOUSEHOLD MEMBERS FROM THE DWELLING UNIT.

(HASB's App. at 59). The lease also provided that the listed persons "shall be considered members of the household and residents in the Dwelling Unit until such time as the Resident provides [HASB] written notice that such persons are no longer members of the household and are there-

fore no longer residents of the Dwelling Unit." *Id.* "[A]nnual recertification" of "family composition" was required. *Id.* at 63. Further, a provision entitled "TERMINATION OF LEASE" stated as follows:

C. Criminal Activity Grounds for Termination by [HASB]. [HASB] has a One Strike or "Zero Tolerance" policy with respect to violation of Lease terms regarding criminal activity. Either of the following types of criminal activity by the Resident, any member of the household, a guest, or another person under their control shall be cause for termination of this Lease and eviction from the Dwelling Unit, even in the absence of an arrest or conviction:

(i) Any criminal activity that threatens the health, safety or right to peaceful enjoyment of [HASB] public housing premises by other Residents; or

(ii) Any drug-related criminal activity on or off such premises.

ANY CRIMINAL ACTIVITY OR DRUG–RELATED CRIMINAL ACTIVITY SPECIFIED ABOVE CONSTITUTES A SERIOUS VIOLATION OF MATERIAL TERMS OF THE LEASE AND WILL BE GROUNDS FOR TERMINATION OF THE LEASE AND EVICTION FROM THE DWELLING UNIT. SUCH ACTIVITY CONSTITUTES GROUNDS FOR TERMINATION AND EVICTION NOTWITHSTANDING THE ABSENCE OF AN ARREST OR CONVICTION.

*Id.* at 72. In the event of lease termination, HASB was required to provide a thirty-day written notice to Bishop. With respect to "deciding to evict for criminal activity," the lease stated that HASB

---

**2.** A term of Bishop's lease provided for "annual recertification" of various information including "family composition." (HASB App. 63).

shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effect that the eviction would have on family members not involved in the proscribed activity.

*Id.* at 74.

On July 18, 2008, Derek committed an armed robbery at a store located one-half block from Bishop's unit. HASB confirmed his arrest and the criminal charge, and on August 1, 2008, it provided Bishop with a thirty-day "NOTICE TO TERMINATE LEASE FOR CRIMINAL ACTIVITY." *Id.* at 2. The notice cited Derek's July 18, 2008, arrest and criminal charge, and recited the lease's " 'ONE STRIKE YOU'RE OUT' or 'ZERO TOLERANCE' " and all-capital-letters provisions stating that criminal activity was grounds for termination. *Id.* at 3. The notice further stated that because Bishop's eviction was for a criminal activity, she was "not entitled to a grievance hearing." *Id.* at 3, 4.

Bishop did not move out of the unit within thirty days. Thus, on October 22, 2008, HASB filed in small claims court its notice of claim that Bishop had breached her lease. With the claim it filed a copy of the thirty-day notice to terminate the lease for criminal activity, the lease itself, and an affidavit for immediate possession.[3] Counsel for Bishop appeared on November 3, 2008, and filed her affidavit of indigency and jury trial demand.

On November 13, 2008, the small claims court denied HASB immediate possession; granted Bishop's jury trial demand; and ordered the matter transferred to the plenary docket.[4] On January 5, 2009, HASB brought to the small claims court's attention that the matter had "not yet been transferred" to the plenary docket, alleged that Bishop was "still in wrongful possession of the premises," and sought "an immediate possession hearing." *Id.* at 16. The case was transferred, and on January 9, 2009, the trial court set a hearing for January 21, 2009. On January 13, 2009, Bishop filed a notice to the Attorney General that she was challenging the constitutionality of Indiana's ejectment statute, Indiana Code section 32–30–3–1 *et seq.*[5];

---

**3.** According to the affidavit, HASB was "entitled to immediate possession" of the unit; Bishop had "unlawfully detained possession" of the unit; the "estimated value" of the unit was "greater than its rental value due to the subsidized nature of public housing"; and the the estimated rental value of the unit was "greater than the amount charged to [Bishop] per month because of the federal subsidies for public housing." (HASB's App. at 5).

**4.** It found Bishop to be indigent and waived transfer fees. Small Claims Rule 2(B)(10) specifies that a claim must inform the defendant of her "right to a jury trial and that such right is waived unless a jury trial is requested within ten (10) days after receipt of the notice of claim" (as did the claim herein); and that upon the grant of such a request by the defendant, the claim is to be "transfer[red] to the plenary docket."

**5.** Indiana's ejectment statute provides that "for the recovery of possession of real estate," a plaintiff may file

an affidavit stating the following:
(1) The plaintiff is entitled to possession of the property described in the complaint.
(2) The defendant has unlawfully retained possession of the property described in the complaint.
(3) The estimated value of the property described in the complaint.
(4) The estimated rental value of the property described in the complaint.

I.C. § 35–30–3–1. Upon the filing of such an affidavit, a hearing is set for the defendant a "to show cause why the judge should not remove the defendant from the property and put the plaintiff in possession." I.C. § 35–30–3–2. After this hearing on the order to show cause, the trial court

shall (1) consider the pleadings, evidence, and testimony presented at the hearing;

and a motion to direct the attendance of Derek, "a prisoner at the Westville Correctional Facility ... at any hearing" on HASB's request for immediate possession. *Id.* at 24. On January 21st, the trial court cancelled the hearing set for that date and scheduled February 13, 2009 "for *status*" conference. *Id.* at 30. Thereafter, the Attorney General's office appeared and filed its intent to be heard. On February 12, 2009, Bishop filed a motion to convene a jury "on all issues so triable, including Immediate Possession." *Id.* at 81.

On February 13, 2009, the trial court heard arguments by counsel. By order of that date, it set a hearing for March 2, 2009 for "Preliminary Determination of Immediate Possession." Bishop's App. at 6. It also denied Bishop's motion for a jury trial "as to the Preliminary Determination of Immediate Possession Hearing and Prejudgment Order of Immediate Possession," and her motion seeking Derek's attendance "at the Preliminary Determination of Immediate Possession Hearing." *Id.* On February 24, 2009, Bishop filed a motion for partial summary judgment, wherein she claimed that the Indiana ejectment statute was unconstitutional on due process and equal protection grounds.

On March 2, 2009, the trial court heard testimony. Cornelius Lotte, assistant manager of public housing for HASB, testified that HASB received funds from the HUD; HASB owned the unit in which Bishop resided; Bishop had signed the lease; Bishop's reports to HASB indicated that Derek was a household member in July of 2008; as of August 1, 2008, she had not notified HASB in writing that Derek was not a member of her household; Derek was convicted of the armed robbery of a store "across the street probably half-a-block" from Laurel Court, (tr. at 67); and that Bishop remained in the unit. Lotte also testified that although a five-bedroom apartment would rent for approximately $600.00 monthly; however, based on Bishop's household size and income, from 2003 through August of 2008, Bishop had paid no rent. Tim Pruitt, housing manager for Laurel Court, testified that he signed the August 1, 2008 Notice to Terminate Lease for Criminal Activity, handed it to Bishop, and explained it to her.

Bishop admitted that she signed the lease and confirmed to HASB in February of 2008 that Derek was a member of her household. Bishop testified, however, that Derek had not lived in her household since late February or early March of 2008. She also testified that on August 13, 2008, she wrote a letter to the HASB acknowledging that Derek committed the armed robbery. She testified that neither she nor any of her other nine children had any involvement in Derek's armed robbery, and that her eviction "would put [her] in a hardship." (Tr. 115). Bishop's son D.A. testified that Derek had moved out of the unit in late February or early March of 2008, as did Derek's best friend Curtis Russell.

At the conclusion of the hearing, Bishop asked permission to provide additional submission to the court. The trial court granted the request. Subsequently, Bishop submitted her memorandum of law, and HASB submitted its response thereto. The latter included a certified copy of Derek's July 21, 2008 charging information; his signed September 30, 2008 agreement to plead guilty to armed robbery; and the police department reports. One report re-

---

and (2) determine with reasonable probability which party is entitled to possession, use, and enjoyment of the property. The court's determination is preliminary pending final adjudication of the claims of the parties.
I.C. § 35–30–3–5.

flects Derek's address as being "1005 Laurel Court," and after receiving and waiving his *Miranda* warnings on July 18, 2008, Derek admitted that before committing the robbery, he got the bandana he used to cover his face "out of his sisters [sic] bedroom at his house," and "left the house to do the robbery"—"walk[ing] down Laurel Street and then in between" two other streets to the store. (HASB App. 154, 155).

On March 20, 2009, the trial court issued its "Order for Eviction and Immediate Preliminary Possession." (Bishop's App. 10). It found "more likely than not true" that Derek was a resident of the unit; Bishop had indicated to HASB that Derek was a household member, and her lease required her to notify HASB in writing of any change in household composition; Derek was charged and convicted of committing an armed robbery, which action put HASB premises "in danger of immediate harm"; Bishop had not notified HASB in writing that Derek was not a member of her household prior to the robbery; the lease gave HASB "the legal right to terminate" Bishop's lease and her "right of possession" of the unit due to Derek's undisputed criminal actions; HASB had provided Bishop notice of termination of her lease; the value of the leased unit was greater than Bishop's rent; and Bishop "wrongfully remain[ed] in possession" of the unit. *Id.* at 11. Finding these facts were "supported by the evidence," the trial court granted HASB "prejudgment possession." *Id.* The trial court further ordered HASB to post a bond "to assure the payment of any damages [Bishop] may suffer if this order should be wrongful." *Id.*

Thereafter, HASB filed bond. On March 30, 2009, Bishop filed her notice of appeal.[6]

## DECISION

### 1. *Jury Trial*

■ Bishop argues that the trial court erred when it refused to convene a jury for the immediate possession hearing. She reminds us that Article 1, Section 20, provides that "[i]n all civil cases, the right of jury trial shall remain inviolate," and Indiana Trial Rule 38(A) provides that "[i]ssues of law and issues of fact in causes that prior to the 18th day of June 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable." Bishop asserts that before the 1852 date, ejectment "was a legal action triable to a jury at common law." Bishop's Br. at 5. Therefore, she argues, the trial court interpreted Indiana Code section 32–30–3–5 to "implicitly revoke the right to jury trial in immediate possession hearings," and thereby violated her right to a jury trial under the Indiana Constitution.

■ When a statute is challenged as an alleged violation of the Indiana Constitution, our standard of review is well settled. *Wallace v. State*, 905 N.E.2d 371, 378 (Ind.2009). Every statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing. *Id.* The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id.*

Bishop cites to various authority noting that before June 18, 1852, an ejectment action was a legal action. *See Midwest*

---

**6.** Subsequently, Bishop advised the trial court that she and HASB had reached an agreement whereby she would vacate the unit on April 4, 2009.

*Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 169 (Ind.2000), (J. Boehm concurring, joined by J. Dickson); *City of Terre Haute v. Deckard*, 243 Ind. 289, 293, 183 N.E.2d 815, 817 (1962); *Howell v. State Farm Fire & Cas. Co.*, 530 N.E.2d 318, 319–20 (Ind.Ct.App.1988).[7] Bishop argues that based upon this historical characterization, she necessarily has a right to a jury trial at each stage of HASB's action to remove her from possession. We cannot agree.

We read the Indiana ejection statute to preserve Bishop's right to a jury trial—on the ultimate outcome, *i.e.*, the merits of HASB's claim that it is entitled to possession based upon her breach of an express term of the lease. In *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), the United States Supreme Court considered a century-old Oregon ejectment statute that provided a bifurcated proceeding for possession of real property, requiring a "judicial determination that [the tenant] is not legally entitled to possession" before any forcible eviction of the tenant from the property. *Id.* at 72, 92 S.Ct. 862. While *Lindsey* considered arguments of due process and equal protection violations of the U.S. Constitution, we find its analysis relevant to the issue here. *Lindsey* noted that the Oregon statute "obviate[d] resort to self-help and violence," whereby the common law had permitted the landlord to enter and expel a tenant by force, and provided a remedy to "prevent such breaches of the peace." *Id.* at 71, 92 S.Ct. 862. Oregon's 1866 statute was found to "protect tenants as well as landlords" by "provid[ing] a speedy, judicially supervised proceeding to settle the possessory issue in a peaceful manner." *Id.* at 71–72, 92 S.Ct. 862.

Similarly, Indiana's ejectment statute provides for a pre-judgment possession hearing to allow the defendant to controvert plaintiff's affidavit "or to show cause why the judge should not remove the tenant from the property and put the plaintiff in possession." I.C. § 32–30–3–2; *see also Cunningham v. Georgetown Homes, Inc.*, 708 N.E.2d 623, 627 (Ind.Ct.App. 1999). The statutory hearing manifests the inherent power of trial courts to intercede at an early stage—to make a preliminary decision before what could thereafter be a lengthy judicial process. Before issuance of a preliminary decision, the defendant/tenant is given the express opportunity to dispute the landlord's claim for immediate possession. Moreover, this preliminary possession decision triggers the requirement that the plaintiff/landlord file "a surety ... in an amount sufficient to assure the payment of any damages the defendant may suffer if the court wrongfully ordered" preliminary possession to the landlord. I.C. § 35–30–3–6. The preliminary possession decision is *also* subject to further proceedings to reach an ultimate determination—the "final judgment" that "supersedes" the "prejudgment order for possession." I.C. § 35–30–3–12.

The Indiana statute merely allows the trial court to make a preliminary decision as to the right to immediate possession of the property. It preserves Bishop's right to a trial by jury on the ultimate issue as to whether she should be ejected from the property. We find that there is no constitutional right to a jury trial at the preliminary possession hearing in an ejectment proceeding. Therefore, Bishop has failed

---

**7.** Bishop also cites to *Murray v. City of Lawrenceburg*, 903 N.E.2d 93, 103–105 (Ind.Ct. App.2009), *trans. granted. Murray* is no longer good law, see Ind. Appellate Rule 58(A), but it had cited the *Midwest Security* concurrence, and *State ex rel. Dep't of Natural Res. v. Winfrey*, 419 N.E.2d 1319, 1321 (Ind.Ct.App. 1981)-which cited to *Emerick v. Miller*, 159 Ind. 317, 64 N.E. 28 (1902) in this regard.

to persuade us that the ejectment statute violated her right to a jury trial pursuant to the Indiana constitution. *Wallace*, 905 N.E.2d at 378.

## 2. *Require Derek's Presence*

The trial court has inherent discretionary power in the admission of evidence. *McManus v. State*, 814 N.E.2d 253, 264 (Ind.2004), *cert. denied.* The trial court's decision regarding the admissibility of evidence is reviewed only for an abuse of that discretion. *Id.* An abuse of discretion occurs when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Saunders v. State*, 848 N.E.2d 696, 702–03 (Ind.2003).

Bishop argues that the trial court committed reversible error when it refused to order that Derek be transported from prison to testify at the immediate possession hearing. Specifically, she asserts that Derek's testimony was necessary to establish that she and her other nine children "were innocent of any involvement in Derek Bishop's criminal activity," and Derek "had only intermittent contact with Mrs. Bishop's household" after late February of 2008, "when he moved out." Bishop's Br. at 7. Bishop argues that this testimony should then have been considered by the trial court pursuant to the HUD regulation allowing a public housing authority to permit the household to continue residency if the authority "determines ... the circumstances leading to the eviction no longer exist." *Id.* at 8 (quoting 24 C.F.R. § 960.204).

As HASB correctly notes, Bishop made no offer of proof at the preliminary possession hearing. An offer of proof is necessary to preserve an issue for review. *See, e.g., Woods v. State*, 892 N.E.2d 637, 641–42 (Ind.2008); Ind. Evidence Rule 103(a)(2). Further, as Bishop's own brief states, the trial court heard testimony from Bishop, her son Damian, and family friend Curtis Russell "that at the time of the robbery in July 2008, Derek Bishop maintained a separate household with his pregnant girlfriend." Bishop's Br. at 7. Even if Derek had moved from Bishop's unit in late February of 2008, the terms of the lease clearly provided that until Bishop provided written notice to HASB of this fact, he was considered to be a resident of the unit. Hence, evidence at the hearing of Derek's absence was not relevant to controverting the HASB claim that Bishop had breached the terms of her lease. *See* Ind. Evid. R. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

As to any involvement by Bishop and Derek's siblings in his July 2008 crime, neither the lease nor any HUD regulation to which Bishop directs us provide that their non-involvement was the dispositive issue as to whether she should remain a tenant. Further, *Dep't of H.U.D. v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002), held that "[r]egardless of knowledge, a tenant who 'cannot control ... criminal activities by a household member which threaten health or safety of other residents, is a threat to other residents and the project,' " and that it was "reasonable for Congress to permit no-fault evictions in order to 'provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs.' " *Id.* at 133, 122 S.Ct. 1230 (internal citations to federal law and regulations omitted). Moreover, the trial court had evidence of admissions by Derek that directly connected his presence in Bishop's unit with the crime he committed. Hence, there was evidence to support the trial

court's finding that HASB's premises were "in danger of immediate harm." (Bishop App. 11). We find no abuse of discretion in the trial court's refusal to order Derek's presence at the immediate possession hearing.

### 3. *Failure to Follow HUD Rules*

■■ Bishop next argues that the trial court failed to follow HUD rules in evicting her. Therefore, she claims, we should undertake a *de novo* review of the trial court's interpretation of law. Bishop cites to *Rucker* for the proposition that public housing authorities should exercise discretion in its eviction of tenants. The HUD regulations provide that in reaching an eviction decision after the commission of a criminal act by a household member, the housing authority "shall have the discretion to consider all of the circumstances of the case." *Rucker*, 535 U.S. at 129, 122 S.Ct. 1230 (quoting 24 C.F.R. § 966.4(*l* )(5)(i)). Further, Bishop's lease provides that "deciding to evict for criminal activity, [HASB] shall have discretion to consider all of the circumstances of the case...." (HASB App. 74). Accordingly, we find that the standard of review is whether the trial court abused its discretion when it granted preliminary possession to HASB on its complaint to terminate Bishop's lease.

Bishop argues that HASB "did nothing" to "weigh" the various circumstances. Bishop's Br. at 11. The lease and HUD regulations provide for HASB to *consider* the circumstances of a household wherein one member has committed a crime. The lease, however, clearly specifies that criminal activity by any member of the household is a breach of the lease and grounds for termination of the lease. It was undisputed that Derek committed a criminal act when, according to the written terms of the lease, he was considered to be a resident of Bishop's household.

We note that certain statements in HASB's brief (e.g., that the lease's "plain language [ ] permits the HASB, in its discretion to consider or not consider mitigating factors regarding her eviction," HASB's Br. at 11) raise the troubling *possibility* that HASB could consider the connection of a household member to *any* criminal activity (no matter how serious) would warrant an eviction—even without HASB's considering all of the circumstances of the case. However, the record here does not establish that such took place with respect to the Bishop eviction. Therefore, we do not find that the trial court abused its discretion when it granted preliminary possession to HASB.

### 4. *Illegal and Unconscionable Contract*

■ Bishop also argues that the lease between herself and HASB was "an illegal contract," and therefore unenforceable. Bishop's Br. at 11. The illegality of the lease is established, she claims by the "prodigious amount of bargaining power" held by HASB. *Id.* at 12 (citing to *Weaver v. American Oil Co.,* 276 N.E.2d 144, 147–148 (Ind.1971)).

*Weaver* held that the "basic test of unconscionability is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Id.* at 146. Bishop does not attempt to apply the rationale of Weaver to the lease here. Further, Bishop admitted that the language in her lease "follows a standard format prescribed by HUD." Bishop's Br. at 14.

Bishop further argues that the lease grants to HASB the "sole discretion" to decide whether the violation of which she

was charged "must subject her to eviction," *id.* at 13, and amounts to an "adhesion contract ... imposed and drafted by a party of superior bargaining strength" who relegated to her "only the opportunity to adhere to the contract or reject it." *Id.* at 13 (citing to *Pigman v. Ameritech Pub., Inc.,* 641 N.E.2d 1026, 1035 (Ind.Ct.App. 1994)). Accordingly, she asserts, "basic fairness" should preclude HASB's "unilateral[ ], unreasonabl[e], and unfair[ ]" application of the lease's terms to her, and lead us to find the lease "unconscionable on the facts in evidence in the present case." *Id.* at 14. We are not persuaded.

HASB is funded with federal money and is governed in great detail by federal law and regulations. The provisions in Bishop's lease regarding the commission of criminal acts follows federal rules for such provisions in public housing contractual leases. *See* 24 C.F.R. 966.4(f)(12)(i)(A) and 24 C.F.R. 966.4(*l* )(5)(ii)(A). The provision in Bishop's lease granting HASB discretion in the termination of the lease also follows the federal rule in that regard for a public housing lease. *See* on 24 C.F.R. 966.4(*l* )(5)(vii)(B). We noted in *Lowery v. Housing Authority of Terre Haute,* 826 N.E.2d 685, 689 (Ind.Ct.App.2005), that a "public housing lease must" include these provisions. *See also Rucker,* 535 U.S. at 128–29, 122 S.Ct. 1230 (federal statute and regulations require such lease terms). We find that this authority renders inapposite the Indiana common law "bargaining strength" argument.

As to Bishop's plea for "basic fairness," and whether the facts here demonstrate unconscionability, Bishop never claimed that she did not read or understand her lease. Further, as her brief concedes, she benefitted from the lease by living in the five-bedroom unit from March of 2003 until September of 2008 rent-free, and only paid $23 monthly thereafter. In return, Bishop

was required to comply with the terms of the lease, *i.e.,* to notify HASB of any change in the composition of her household, and to be responsible for the actions of household members. We do not find the lease to be unconscionable.

### 5. *Due Process*

■ Finally, without citation to authority, Bishop argues that in terminating her lease, HASB "imposed a 'strict liability' concept" that "imposes personal liability regardless of personal knowledge of personal action of anyone in the Bishop family." Bishop's Br. at 15. According to Bishop, this "violates due process rights of the Bishop family." *Id.* Unfortunately, she fails to present a cogent argument that would enlighten us as to the basis for her conclusory assertion.

■ Most recently, our Supreme Court has stated that "due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses." *Morton v. Ivacic,* 898 N.E.2d 1196, 1199 (Ind. 2008). It is undisputed that Bishop was given notice of the terms of her lease via a written lease with express terms and conditions therein. Further, pursuant to the lease, she was given notice on August 1, 2008, that HASB was terminating her lease for violation of its terms and for her to vacate the unit. Thereafter, upon Bishop's failure to vacate, on October 22, 2008, HASB filed its notice of claim with small claims court. Counsel entered his appearance for Bishop on November 3, 2008, and confirmed her receipt thereof. At the immediate possession hearing on March 2, 2009, Bishop had an opportunity to be heard. This opportunity to be heard "includes 'an opportunity to present every available defense.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Bishop was able to present her

defenses. She also had the opportunity at the hearing to confront witnesses. Bishop is asking us to reweigh the evidence, which we will not do. Therefore, we find that her due process claim must fail.[8]

Affirmed.

BAKER, C.J., and NAJAM, J., concur.

---

**8.** Bishop further argues that "[u]nder the decision in *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 979 (Ind.2000)," she "reiterate[s]" her due process argument "as corresponding violation of Article 1, sec. 23 of the Constitution of Indiana." Bishop's Br. at 15. We find this argument to be insufficiently cogent to address; and, consequently consider it waived.