

**FILED**

Oct 08 2024, 9:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Court of Appeals of Indiana

James A. Simon,

*Appellant*

v.

William R. Simon Farms, Inc.,

*Appellee*

---

October 8, 2024

Court of Appeals Case No.
24A-PL-935

Appeal from the Allen Superior Court

The Honorable Jennifer L. DeGroote, Judge

Trial Court Cause Nos.
02D03-2402-PL-88
02D03-2402-EV-448

---

**Opinion by Judge Brown**
Judges May and Pyle concur.

**Brown, Judge.**

[1] James A. Simon ("James") appeals the trial court's order granting immediate possession of certain real property in favor of William R. Simon Farms, Inc., ("Simon Farms") and denying his request for declaratory judgment. His sole assertion is that the trial court denied him his constitutional right to a trial by jury. We affirm.

## Facts and Procedural History

[2] Simon Farms is an Indiana corporation that was formed in 1979 and is currently owned by Sheri Johnson ("Sheri") and her sons, Travis and Kirk. Simon Farms owns property of "about 160 acres" located north of Huntertown at the intersection of State Road 3 and Simon Road in Allen County. Transcript Volume II at 6. The "full 160 acres," which includes farmland, as well as a roughly six-acre tract of land containing a house, barns, and a garage (the "Homestead Property"), has "been in the Simon family for generations." *Id.* After Sheri's parents passed away, Simon Farms was owned "a third, a third, a third" between Sheri, her sister Sandi, and her brother James. *Id.* at 7. Sometime after his wife died in 2007, James and his children began residing in the house on the Homestead Property. James ultimately sold his third share of Simon Farms to Sheri in 2010 and Sandi sold her third to Sheri in early 2011. Regarding James's share of Simon Farms, the sale of his shares to Sheri was memorialized by a stock purchase agreement dated July 27, 2010 (the "Purchase Agreement"). The purchase price for the shares was $1,115 per share for a total sale price of $371,667.

[3]     The Purchase Agreement provided that James would resign as a member of the Simon Farms Board of Directors and as an employee of Simon Farms. The Agreement also contained a provision that stated: "This Agreement constitutes the entire agreement between the parties and there are no verbal agreements that shall be binding upon any of the parties hereto, their agents, successors and assigns, unless expressly set forth in this Agreement." Exhibits Volume at 8.

[4]     At the time the Purchase Agreement was signed, James still resided on the Homestead Property and kept some personal belongings in the various structures on the property. He did not pay rent to Simon Farms to live on the Homestead Property, he paid utilities, and he was expected to "help out around the farm." Transcript Volume II at 39. James resided on the Homestead Property until 2011 when he went to federal prison following his conviction on nineteen felony counts of various forms of tax fraud. Following his release from prison, James returned to live on the Homestead Property. He performed different types of maintenance tasks on the barns such as painting and repair work. Sheri did not expect James to pay rent at this time because she just wanted to help him "get back on his feet" but she expected him to start paying rent "when he became capable of doing that." *Id*. at 15-16. There was no agreement in "writing, oral otherwise about how long [James] could stay . . . [w]here he could stay . . . [w]hat he could do . . . [w]hat rent he would pay. . . [or] anything[.]" *Id*. at 16. It was Sheri's hope that at some point James or his children would be in a financial position to purchase the Homestead Property from Simon Farms.

On February 2, 2024, Simon Farms filed an eviction action against James alleging that he was an at-will month-to-month tenant on the Homestead Property, and that he had refused to vacate the property despite being given more than thirty days' notice prior to the filing of the eviction action. On February 16, 2024, James filed a Demand for Trial by Jury and a Verified Counterclaim for Declaratory Judgement and Injunctive Relief. He alleged that he had an oral agreement with his sister Sheri, acting on behalf of Simon Farms, to reside on the Homestead Property for the balance of his life rent-free in exchange for services such as protecting the Homestead Property and the entirety of the farmland from trespass and wrongdoing, performing routine maintenance, and managing non-routine maintenance. He requested a declaratory judgment acknowledging this right to reside on the Homestead Property and further that he possessed an option to purchase the entire real estate for fair market value. He also sought an injunction to prevent Simon Farms from removing structures from the Homestead Property that James occupied.

On February 21, 2024, Allen County Superior Court Small Claims Division Magistrate Brian Cook entered an order that provided in relevant part:

> The Court having reviewed Defendant/Counterclaim Plaintiff
> James Simon's Demand for Trial by Jury and supporting
> affidavit finds that questions of fact requiring a trial by jury do
> exist. The Court further finds that Defendant/Counterclaim
> Plaintiff's demand was made in good faith. The Court therefore
> ORDERS that this case be transferred to the plenary docket and

set for trial by jury. **Upon acceptance and order of Judge DeGroote.**

Appellant's Appendix Volume II at 42. On the same date, Judge Jennifer L. DeGroote entered an order accepting jurisdiction over this case to remove it from the small claims court docket but found that James was "not entitled to a jury trial on the equitable relief requested by [him] on the issue of possession, nor with the respect to the claim for declaratory judgment." *Id*. at 43. Accordingly, the trial court set a bench hearing to address both "parts of the claim" for March 19, 2024. *Id.*

[7] The court held the scheduled hearing on March 19. The three Simon siblings testified and the court admitted numerous exhibits. James testified that on or about October 4, 2016, he entered into an oral agreement with Sheri to live on the Homestead Property rent-free for life. However, when asked if Sheri actually stated that he "could live there rent-free for life," James responded, "[s]he didn't use those words, no." Transcript Volume II at 62. Sheri testified that she never had any such discussions with James about living on the property rent-free for life and that no such agreement, oral or otherwise, existed. Sheri testified that she did request that James pay rent from time-to-time but that he indicated it would be a hardship due to his financial situation. The record indicates that James made a total of three rent payments to Simon Farms in 2023 totaling $2700. Sheri testified that on October 3, 2023, Simon Farms passed a resolution authorizing the sale of the entire Property. She explained that after the first offer to purchase fell through, Simon Farms signed a purchase

agreement on November 15, 2023, with Granite Ridge Builders to sell the entire Property for four million dollars. On that same day, Simon Farms sent an email to James giving him a little over two months, until January 31, 2024, to vacate the Homestead Property. Simon Farms also sent him a written "Notice to Vacate" which he received on November 22, 2023. Appellant's Appendix Volume II at 28-29. Sheri testified that Simon Farms was "forced" to file the eviction action after James failed to vacate the Homestead Property by January 31, 2024. Transcript Volume II at 27.

[8]  On March 20, 2024, the court issued its order on both the declaratory judgment and possession claims. The court determined that James "failed to establish the existence of a valid oral agreement between him and Simon Farms and, therefore, [James] is not entitled to declaratory relief in his Counter-Claim." Appellant's Appendix Volume II at 19 (emphasis and underlining omitted). As to Simon Farms's claim for possession, the court determined that the parties "never executed a formal lease agreement for any set term" and therefore, under Indiana law, James was "a month-to-month tenant of the property owned by Simon Farms." *Id*. at 20. Accordingly, the court concluded "[a]s a month-to-month tenant, Simon Farms is only required to give [James] a 30-day notice to vacate which has occurred, and Simon Farms is, therefore, entitled to an Order for Immediate Possession." *Id.* (emphasis and underlining omitted).

## Discussion

[9]  The sole issue presented by James is whether he "was denied his constitutional right to trial by jury." Appellant's Brief at 8 (capitalization omitted). Simon

Farms argues that James had no right to a jury trial and, even if he did, the court's failure to conduct a jury trial was harmless under the circumstances.

[10]     Article 1, Section 20 of the Indiana Constitution ensures that in "all civil cases, the right of trial by jury shall remain inviolate." "This fundamental guarantee secures the right to a jury trial 'as it existed at common law' at the time Indiana adopted its current constitution." *State v. $2,435 in U.S. Currency*, 220 N.E.3d 542, 545 (Ind. 2023) (citations omitted). "For cases or claims deemed equitable, by contrast, 'it is a well-settled tenet that a party is not entitled to a jury trial.'" *Id*. Specifically, Indiana Trial Rule 38(A) provides in pertinent part: "Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable." "Thus, we first ask whether the cause of action existed in 1851. If so, then history settles the matter. But if the cause of action did not exist in 1851, we must decide whether the claim is analogous to one at law or one in equity, as those terms were then understood." *$2,435 in U.S. Currency*, 220 N.E.3d at 545 (internal citations omitted). "Whether certain claims are entitled to a trial by jury presents a pure question of law to which we apply a de novo standard of review." *Id*.

[11]     The Indiana Supreme Court has explained:

> If the essential features of a suit as a whole are equitable and the individual causes of action are not distinct or severable, the entitlement to a jury trial is extinguished. The opposite is also

true. If a single cause of action in a multi-count complaint is plainly equitable and the other causes of action assert purely legal claims that are sufficiently distinct and severable, Trial Rule 38(A) requires a jury trial on the legal claims.

*Songer v. Civitas Bank*, 771 N.E.2d 61, 68 (Ind. 2002).

[12] An equitable remedy is "a nonmonetary one such as an injunction or specific performance, obtained when available legal remedies, usu[ally] monetary damages, cannot adequately redress the injury." Equitable Remedy, BLACK'S LAW DICTIONARY (12th ed. 2024). Eviction is "[t]he act or process of legally dispossessing a person of land or rental property." Eviction, BLACK'S LAW DICTIONARY (12th ed. 2024). Actual eviction is the "physical expulsion of a person from land or rental property." Actual Eviction, BLACK'S LAW DICTIONARY (12th ed. 2024).

[13] It is basic and well understood that eviction falls within the category of an equitable action, and this Court has long observed that there is no constitutional right to a jury trial at the preliminary possession hearing in an eviction proceeding. *Bishop v. Hous. Auth. of S. Bend*, 920 N.E.2d 772, 779 (Ind. Ct. App. 2010), *trans. denied*, *cert. denied*, 562 U.S. 1189 (2011). Indeed, James concedes that Simon Farms's claim for immediate possession of the Homestead Property was an equitable cause not triable by jury, and he further acknowledges that he was not entitled to a jury trial on his claim for injunctive relief. However, he maintains that he was entitled to have a jury determine ultimate possession of the Homestead Property, a claim based upon the existence of an oral agreement

between the parties. He argues, "an eviction can be a two[-] step process" with the first step being determining "the right to immediate possession" and the "second phase" being "to determine the right of ultimate possession of the property." Appellant's Brief at 7. He asserts that the "existence of [an] agreement" and the right to "ultimate possession" of the Homestead Property was an issue triable by jury. *Id.*[1] He maintains that the fact that "a declaratory judgment was sought did not deprive [him] of his right to trial by jury" on this issue. *Id.* at 11 (citing *Winney v. Bd. of Comm'rs of Vigo Cnty.*, 174 Ind. App. 624, 627, 369 N.E.2d 661, 663 (1977)) (observing that a "party may have a right to a jury trial upon issues of fact in a declaratory judgment action" and, "[w]here there are material issues of fact in an action which was a legal action at common law and not an equitable action, the right to trial by jury is preserved").

[14]     As noted by Simon Farms, pursuant to Ind. Code § 32-30-3-5, a trial court may hold a hearing on a request for immediate possession and, after the hearing, "the court shall: (1) consider the pleadings, evidence, and testimony presented at the hearing; and (2) determine with reasonable probability which party is entitled to possession, use, and enjoyment of the property." The court's determination "is preliminary pending final adjudication of the claims of the parties. If the court determines that the action is an action in which a

---

[1] In his main brief, James does not mention the portion of his declaratory judgment request regarding his alleged option to purchase the entire property, and he does not suggest he was entitled to a jury trial based upon that request. Accordingly, we decline to discuss it.

prejudgment order of possession in plaintiff favor should issue, the court shall issue the order." Ind. Code § 32-30-3-5. A final judgment supersedes any prejudgment order for possession. Ind. Code § 32-30-3-12. In other words, the Indiana statute merely allows the trial court to make a preliminary decision as to the right to immediate possession of the property. *Bishop*, 920 N.E.2d at 779. The right to a trial by jury remains on the issue of final possession of the property. *Id.*

[15] Although his arguments are difficult to discern, it appears that James's claim is essentially that, although the trial court did not err in conducting the March 19, 2024, hearing without a jury and determining the immediate possession issue, the trial court violated his constitutional right to a jury trial when it issued an order that resolved "issues which were triable by jury, the existence of the agreement and the right to [final] possession of the Homestead." Appellant's Brief at 7. Simon Farms responds that, while James "may have been entitled to a jury trial on the issue of final possession if there were outstanding issues of material fact which required a fact-finder, here there were no outstanding factual issues" and therefore, under the circumstances presented, it was proper for the trial court to decide ultimate possession as a matter of law. Appellee's Brief at 14. We agree with Simon Farms.

[16] Here, the pivotal question presented to the trial court regarding James's claim for declaratory relief, as well as the issue of immediate possession of the Homestead Property, was a pure question of law; namely, whether an oral agreement existed between James and Simon Farms entitling James to live on

the Homestead Property rent-free for the remainder of his life. As this Court has explained,

> Contracts are formed when parties exchange an offer and acceptance. For an oral contract to exist, parties have to agree to all terms of the contract. If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed. A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract. Whether a set of facts establishes a contract is a question of law.

*Kelly v. Levandoski*, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005), *trans. denied*.

[17] James asserts that the trial court "improperly weighed conflicting evidence and assessed credibility in reaching its decision that there was no agreement" and that there remained "factual issues to be decided." Appellant's Reply Brief at 6, 8 (citing *City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1079 (Ind. Ct. App. 1991) ("While the question of whether a certain or undisputed state of facts establishes a contract is one of law for the court, where the existence and not the validity or construction of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether a contract in fact exists") *reh'g denied, trans. denied*). Despite these assertions, we agree with the trial court's resolution of this issue as a matter of law because the relevant facts as to the existence of a valid oral agreement were undisputed.

[18] Both James's and Sheri's testimony made clear that the parties never agreed to the essential terms of any oral agreement, and James admitted that Sheri, acting on behalf of Simon Farms, never actually told him that he could live on the Homestead Property rent-free for the remainder of his life. Based upon the facts presented, we agree with trial court that "[i]n this case there was no meeting of the minds, even taking [James's] testimony as truthful[.]" Appellant's Appendix Volume II at 19. Thus, after the trial court determined that no valid oral contract existed and that Simon Farms was entitled to immediate possession of the Homestead, which James concedes was a claim not triable by a jury, no factual issues remained to present to a jury on the issue of final possession.[2]

[19] We further agree with Simon Farms that any error in the court's failure to hold a jury trial on the issue of final possession was harmless. We note that the Indiana Supreme Court has recognized that, under proper circumstances, trial courts often decide cases as a matter of law. Specifically, in considering both summary judgment and judgment on the evidence standards, the Court recently explained, "the inquiry under each is the same: whether the evidence presents a

---

[2] Having found that no valid oral agreement existed, the trial court proceeded to determine that James was a month-to-month tenant pursuant to Indiana law and his tenancy was subject to termination upon one-month's notice which was served upon James on November 22, 2023. *See* Ind. Code § 32-31-1-2 ("A general tenancy in which the premises are occupied by the expressed or constructive consent of the landlord is considered to be a tenancy from month-to-month. However, this section does not apply to land used for agricultural purposes."); Ind. Code § 32-31-1-4(b) ("Notice to the tenant equal to the interval between the periods is sufficient to determine a tenancy described in subsection (a)."). James states in is reply brief that his "occupancy was for part of the property the parties called the Homestead which contained the house and other buildings" and "[t]hat area was not used for farming." Appellant's Reply Brief at 7. James does not challenge the court's findings as to his month-to-month tenancy on appeal.

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Cosme v. Clark*, 232 N.E.3d 1141, 1151 (Ind. 2024) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, 106 S. Ct. 2505, 2512 (1986)). When determining whether judgment on the evidence is appropriate, "a judge may assess both the quantity and quality of the evidence . . . but may not weigh the conflicting evidence or assess witness credibility; these are fact-finding functions within the jury's sole province." *Id.* at 1148. Judgment on the evidence is available when the claimant "has not proved its claim because no reasonable jury could find for it." *Id.* at 1150.

[20] Stated another way, we must be "mindful that error in the denial of a jury trial may be harmless." *Corrigan v. Al-Trim Corp.*, 700 N.E.2d 481, 484-485 (Ind. Ct. App. 1998) (citing *Builders Square v. Haines*, 696 N.E.2d 453, 455 (Ind. Ct. App. 1998), *trans. denied*), *reh'g denied, trans. denied*. This Court has explained:

> The test for deciding whether the failure to conduct a jury trial constituted harmless error is to determine whether the trial court would have been required to enter a directed verdict had a jury trial been held, or whether a jury verdict in favor of the losing party could have been sustainable. In making this determination, we review the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the party asserting the right to a jury trial.

*Id.* (citations and quotation marks omitted).

Here, the trier of fact was required to determine the existence of a valid oral agreement between James and Simon Farms. As concluded by the court, even assuming James's testimony was true, and considering all reasonable inferences in his favor, a valid oral agreement allowing him "to possess, occupy, use, reside, and enjoy the Homestead and the improvements thereon for the remainder of his life" could not be found to exist. Appellant's Appendix Volume II at 20. Thus, a verdict which differed from the judgment entered by the trial court in this case would not have been sustainable on the record. Therefore, we conclude that the court's failure to conduct a jury trial on the issue of final possession was harmless.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

May, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Patrick G. Murphy
Caleb W. Peery
Barrett McNagny LLP
Fort Wayne, Indiana